BENJAMIN BISHOP v. IRA DAY, MAHLON COTTRILL, ROBERT
BARKER, WM. P. BRIGGS AND CHARLES M. HUNTINGTON.

*(In Chancery.)*

After a debt has become due, a surety may resort to chancery to compel the
principal to pay the debt, that the surety may be exonerated from liability.
Where the orator had given his promissory note to S., and D. C. and B.
had subsequently given their bond to the orator to indemnify him against
such note, it was held that the obligors had made it their debt to pay, and
that, as between the maker of the note and the obligors of the bond, they
stood as principals, and the maker as surety, and that the right of princi-
pal and surety existed between them.

THIS was an appeal from the court of chancery.

The orator, in his bill, set forth and charged, that on the
23d of January, 1827, one Eliakim Spooner, then of Wood-
stock, in the county of Windsor, and Charles M. Hunting-
ton, of Richmond, in the county of Chittenden, and Ira
Day, of Barre, in the county of Washington, were joint
owners of a line of stages, running from Burlington to Mont-
pelier, consisting of coaches, sleighs, horses, &c., and the
right of transporting the mail, in the following proportions,
viz: the said Spooner and Huntington each one-fourth, and
the said Day one-half of said property ; that, on the said
23d day of January, 1827, the said Spooner and the orator
entered into a contract, relative to the share of said Spooner
in said stage property, by which the said Spooner agreed to
sell to the orator the one-fourth part of said stage property,
and put him in immediate possession thereof, at the price of
five hundred dollars ; that the orator then and there paid
Spooner one hundred dollars in money, and executed and
delivered to him two notes of that date, one for $200, paya-
ble in one year from the first day of February, 1827, with
interest after the first day of February, 1827, the other for
the like sum of two hundred dollars, payable in two years
from the said first day of February, 1827, with interest after
the said first day of February, 1827 ; that immediately after
the said purchase, the orator went to take possession of said
property ; that the said Huntington resisted him, and refus-
ed to allow him to take possession of the property, or to par-

ticipate in the use or profit thereof, and that, for the purpose of giving notice to said Spooner of the acts of said Huntington, the orator made a journey from Richmond, where he then resided, to Woodstock, and communicated the same to said Spooner, and thereupon the said Spooner agreed to come to Richmond and put the orator in possession of the said property, or give up to him the said notes, and refund the said $100; that, as the orator was informed, and believed, the said Spooner did, according to his agreement, start from Woodstock, for the purpose of coming to said Richmond, and came as far as Montpelier, but for some reason, unknown to the orator, returned to Woodstock and immediately left this state; that your orator was informed and believed, that the said notes were left with Robert Barker, of the same Woodstock, who is a brother-in-law of said Spooner, and in whose family the said Spooner resided, and, as the orator supposed, for the purpose of being delivered to your orator; that the orator subsequently had a conversation with Barker, at his house in Woodstock, and said Barker admitted to the orator, that he held the said notes and that they ought to be given up to the orator, but, for some excuse, not recollected, declined giving them up at that time; that all the stage property remained in the possession of said Day and Huntington, and that the whole profits of the same were received by them, or by them and the said Barker, and Mahlon Cottrill, and that, afterwards, on the 9th day of January, 1828, the said Day, Cottrill and Barker, executed and delivered to the orator their bond of that date, in the penal sum of one thousand dollars, with a condition thereto annexed, providing among other things, " that if " the said Day, Cottrill and Barker shall pay, or cause to be " paid or cancelled, or save harmless the said Bishop from " the payment of a demand which may be hereafter made " upon him, for the payment of two certain notes executed " by said Bishop, as he thinks, in the month of February, " 1827, or about that time, given at Woodstock, to one Eli- " akim Spooner, each for the sum of two hundred dollars, " for and in consideration of certain stage property," then said bond to be void and of no effect, otherwise of force; that the sole and only consideration for said two notes, was the sale of said stage property, and that the orator had

never had the possession nor use of any part of it, nor in any way participated in the profits thereof, but the said property had ever remained in the possession of the said Day and Huntington, or those to whom they had conveyed it, and that they had received all the profits and proceeds thereof.

And the orator further set forth and charged, that the said Huntington subsequently commenced his action against the said Spooner, and the orator, as trustee of Spooner, upon which occasion the orator made his disclosure, and such proceedings were had in said suit, that, by the consideration of Chittenden county court, at their March term, 1832, the orator was declared to be chargeable as such trustee; and no notice of the suit having been given to the said Spooner, said cause was continued for notice; that while said cause was pending in said court, and before any notice to said Spooner, a negociation was commenced by and between the orator and one William Carley, who, as the orator supposed, was the agent of said Day, or of said Day and Cottrill, for the purchase of a farm owned by the orator, in said Richmond, which resulted in an agreement for the sale of said farm, and, in the purchase price, the amount for which the orator was declared chargeable, was estimated and deducted, and the balance paid by said Carley; that, on that occasion, the following agreement, in writing, was executed by said Carley, and delivered to the orator:

"Whereas, Benjamin Bishop has this day deeded to me
"his farm, in Richmond, and, whereas, as a part of the con-
"sideration of the said deed, it was agreed between the said
"Benjamin and myself, that I should fully indemnify and
"save harmless the said Benjamin from a certain suit, Charles
"M. Huntington now has pending in Chittenden county
"court, against said Benjamin, as trustee of Eliakim Spoon-
"er. Now, I, the said William Carley, jr., do hereby prom-
"ise and agree with the said Benjamin, fully to indemnify and
"save harmless the said Benjamin from all cost and dam-
"age the said Charles M. Huntington may recover against
"him, and likewise fully indemnify and save harmless the
"said Benjamin from any costs, lawyers' fees, and expenses
"he may have been at in the business aforesaid. Burlington,
"                    1833. (signed)    WILLIAM CARLEY, JR."

The orator further set forth and charged, that he was informed and believed, that, at the time of said agreement, with said Carley, the said notes, so by the orator executed, as aforesaid, to said Spooner, were in the hands of said Barker, and that, by the procurement of said Day or Cottrill, or both, they were obtained from said Barker, without the consent or knowledge of said Spooner, and delivered to said Huntington, under an agreement, as the orator believed, that the said Huntington should discontinue his said suit against the orator, as trustee of said Spooner.

And the orator further set forth and charged, that, in said suit in favor of said Huntington, against the said Spooner and the orator, as his trustee, at the March term of said Chittenden county court, the said Huntington entered a non-suit, and immediately thereafter, to wit: on the eleventh day of May, one thousand eight hundred and thirty-five, caused a suit to be commenced upon the said two notes, in the name of said Spooner, against the orator, and that such proceedings were had in said suit, that, by the consideration of Chittenden county court, March term, 1837, a judgment was rendered in the name of said Spooner against the orator, for the full amount of said notes, interest and cost, amounting in all, to the sum of $678,75, and that the said Huntington had caused an execution to be issued thereon, and had levied the same upon the property of the orator, which property was posted for sale.

The orator further set forth and charged, that, since the rendition of said judgment, he caused inquiries to be made of the said Barker, relative to said Spooner, and said notes; that said Barker, in reply, said, that Spooner left this state the winter after the execution of said notes; that he went south, and was seen in Baltimore; that there was a rumor that he was in South America, and that he had never been heard from, and that said notes were left with said Barker, as a deposit, and that he had no knowledge of any directions or consent, on the part of Spooner, for the institution of said suit.

The orator further charged, that Wm. P. Briggs, as attorney, commenced and prosecuted said suit for the benefit of said Huntington, without the knowledge or consent of Spooner. And the orator prayed for a perpetual injunction against the collection of said judgment, and for further relief.

The defendants, Day, Cottrill and Barker, demurred to the bill, and the other defendants, Briggs and Huntington, severally answered, but, as the decision of this court was upon a point not presented in the answers, they are omitted in the statement of the case.

The court of chancery dismissed the bill, and the plaintiff appealed to this court.

*C. Adams,* for orator.

It is not the object of the orator to overhaul the judgment of Spooner against him, nor to prevent Spooner from enforcing any legal right. Hence, the argument and the authorities on which the defendants have relied have no application.

It is admitted that a judgment is conclusive between the parties. How far the orator can avail himself of the fact, that the suit was commenced without the direction or knowledge of Spooner, as between him and Spooner, may admit of doubt. It appears by the bill, that Day, Cottrill & Barker were the parties in fact, and that this has come to the orator's knowledge since the rendition of the judgment, and, as between the orator and these factitious parties, the judgment is not conclusive. The object of the bill is to prevent Day, Cottrill & Barker from making an improper use of the notes which they are bound to pay, and to restrain them from all use of the judgment on the notes, obtained by their procurement, but without the knowledge of Spooner.

Day, Cottrill & Barker never had any legal interest in these notes, nor rightful authority over them, and were trespassers in assuming possession of them. It is stated, in the bill, that Spooner left them with Barker as a deposit ; that no directions have been given for a suit, and it is not pretended that Spooner has given any authority to dispose of the notes.

If Day, Cottrill & Barker had paid the full value of the notes and taken legal possession of them, it gave them no authority to dispose of nor to sue them. Their obligation to the orator was imperative. They were bound to pay the notes and to indemnify the orator against them, and hence, when the notes came into their hands they should have been given up to the orator to be cancelled. The most favorable view that can be taken for Day, Cottrill & Barker, is to assume that they have paid the full value of the notes and taken legal

possession of them.   What, in that case, would be their duty?   Clearly, to surrender the notes to the orator, and for the plain and obvious reason that they had agreed so to do. If this be correct, then the delivery of them to Huntington was a fraud upon the orator, and against this fraud the orator prays protection.

Huntington can acquire no greater [right over the notes, nor in the judgment upon them, than the parties from whom he received them.   The interest of a holder of a note or bill is sometimes sustained on the ground that a full consideration was paid, and that the note or bill was taken in the ordinary course of business, and without any reasonable ground to suspect the right of the seller.   But no one of these requisites is found in this case.   The notes were not taken in the ordinary course of business.   They were over due at the time, were not indorsed, and the fact that Spooner had left the country could not have been unknown to Huntington. Besides this, Huntington has paid nothing for the notes. His claim against Spooner has never been discharged.   If he ever had any claim he has it now, and can enforce it.

Spooner has now the whole legal control of the notes and of the judgment upon them.  He has never sold the notes,'has not indorsed them, nor authorized the sale.  This being the case, Day, Cottrill & Barker can have no legal right over them, and can convey none to Huntington.

It is said that a party shall not have the aid of chancery to defend against a claim, when he has a defence at law.   It is not necessary that we should oppose this proposition.   It only applies to a suit rightfully brought by Spooner, and cannot aid Day, Cottrill & Barker in their attempt to prosecute these notes in the name of Spooner.

The argument that the orator has a remedy at law, does not meet the case.   The remedy at law rests on the bond. If the obligation of Day, Cottrill & Barker be admitted, it would seem to be conclusive.   The right of the orator to proceed at law is founded on the duty of Day, Cottrill & Barker to pay the notes, and this being admitted, chancery will compel the parties to do what they have agreed to do. If Day, Cottrill & Barker, having paid the notes, now had them in their possession, a court of chancery would compel them to give them up to be cancelled.   The moment they

were paid by Day, Cottrell & Barker, they became, in law, the property of the orator, and ceased to have any validity as notes against him.

The possession of the notes by Day, Cottrill & Barker, was either legal or illegal. If legal, the right of Spooner was extinguished, and, as before remarked, they ceased to have any effect as notes. It is an invariable rule that payment, by a party bound to make payment, operates as an extinguishment of the obligation. If the possession was illegal and without authority from Spooner, it conferred no right to the holders, and they could give none to Huntington.

But the orator's remedy, at law, against Day, Cottrill & Barker, may not be complete and perfect. He could only recover of them the amount he is compelled to pay, whereas he may be subjected to ruinous sacrifices to raise the money. To allow Day, Cottrill & Barker to draw the amount of these notes from the orator and then compel a return of it by means of a judgment on their bond, would seem to be serious trifling. Equity, in its control over parties, will compel them to do what they have agreed to do, and the practical effect of this principle can only be obtained by granting the prayer of the orator.

*L. B. Peck*, for defendants.

1. The case, as stated in the bill, does not entitle the complainant to the aid of this court. The facts, upon which he grounds himself for relief, constituted a good defence to the action upon the notes; and if he neglected to make his defence, or made it and was overruled, he must abide the consequences. The principle is well settled that a party will not be aided, after a trial at law, unless he can impeach the justice of the verdict, by facts, or on grounds of which he could not have availed himself, or was prevented from doing it, by fraud or accident, or the act of the opposite party, unmixed with negligence or fault on his part. *Lansing* v. *Eddy*, 1 Johns. Ch. R. 49. *Smith et al.* v. *Lowry*, id. 320. *Barker et al.* v. *Simpson*, id. 465. *Duncan* v. *Lyon*, 3 Johns. Ch. R. 351. *Foster* v. *Wood*, 6 Johns. Ch. R. 87. *Floyd* v. *Jayne et al.*, id. 479. *Smith* v. *M'Ivor*, 5 Peters' Ch. R. 662. *Land et al.* v. *Sergeant et al.* 1 Edward's Ch.

R. 164. *Brown* v. *Swann*, 10 Peters' R. 497. \ *Green* v. *Gouverneur*, 1 Johns. Cas.

It does not appear, from the bill, but that all the facts and circumstances detailed were within the knowledge of the complainant, or might have been ascertained before the trial in the county court. Under these circumstances he comes too late for the interposition of this court. *Brown* v. *Swann*, cited above.

2. The complainant has a perfect remedy at law by an action on the bond given by the defendants, Day, Cottrill & Barker, and therefore this court will not interfere.

3. *Carley* should have been made a party. If there was a fraudulent intent in discontinuing the trustee suit against the complainant, *Carley* must have been a prominent party in the transaction, and is a necessary party to the bill.

The opinion of the court was delivered by

BENNETT, J.—There is one view of this case in which we are all agreed, that the bill of the orator presents an equitable right which we can recognize. After the notes were executed by Bishop to Spooner, by some subsequent arrangement between Bishop on the one part and Day, Cottrill & Barker, on the other, the latter gave their bond to Bishop, conditioned to pay the notes to Spooner and save Bishop harmless therefrom ;. and this bond is fully set out in the bill. By this arrangement Day, Cottrill & Barker made these notes their debt to pay, and, as between these parties, they stood as principals, and Bishop in the nature of surety ; and the doctrine applicable to principal and surety well applies. At law, the surety must pay the debt before he can have an action against his principal. But not so in equity. After the debt has become due, the surety may resort to chancery to compel the principal to exonerate him from all liability by the payment of the debt. This is a reasonable doctrine and has long been well established.

Mitford's Eq. Pl. 148. 1 Stor. Com. on Eq. 322, sec. 327. 2 Stor. Com. on Eq. 35, sec 730. The case of the *Earl of Ranelaugh* v. *Hayes*, 1 Ver. 189, is much like the present. The Earl had been sued for a sum of money which he was bound to pay to the King, and which the defendant, by an agreement between them, ought to have paid ; and the

*Lord Keeper* decreed that the defendant should perform his covenants. This bill, it is true, is informally drawn with this view of the case; but it contains all the facts necessary to create this equitable right in the orator; and though the bill was evidently drawn with a different aspect, yet, under the general prayer of the bill, we can grant such relief as the party entitles himself to, according to his allegations and proofs. Day, Cottrill & Barker have suffered Bishop to be sued on the notes, and they have passed into judgment and execution, and he may well ask a court of chancery to decree that they pay the judgment.

The apparent object of this bill is to procure a perpetual injuction of the judgment; and this is the relief which is specifically prayed for; and the case has been put upon this ground, in argument, but it may, I think, be well questioned whether the bill can be sustained on that ground. As, however, it is clear that the bill discloses an equity in the orator, in the view now taken by this court, there is no occasion of going into any other questions. The decree of the court of chancery must then be reversed, and the cause remanded to that court to be proceeded with accordingly.