Owen, C. J.
I and II. The action below was prosecuted under section 5198 of the Revised Statutes of the United States, which provides:
*137 “The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or wüich has been agreed to be paid thereon. In case flhe greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back, in an action in the nature of an action of debt, twice the amount of the interest thus paid, from the association taking or receiving the same; provided such action is commenced within two years from the time the usurious transaction occurred.”.
It is maintained by counsel for the defendant that the receiver was not the “legal representative” of the shoe company, and he also maintains that: “It is common learning that usury is a personal matter, and can be set up or claimed only by the person himself who saw fit or chose to pay it.”
The principles involved in these two propositions are settled by National Bank v. Trimble, 40 Ohio St. 629, where it is held: “ If the payor of such interest, before action brought, was adjudged a bankrupt, his assignee in bankruptcy became his ‘ legal representative/ and as such was entitled to bring the action.” The court was construing the section involved in this case. We are content with the disposition there made, and are of opinion that the principle of that case reaches the case of an action by a receiver.
III. The question, however, which has chiefly engaged the consideration of this court, is: Was the plaintiff legally appointed receiver of the shoe company ? The distinguished counsel for the defendant simplifies the discussion of this question by the statement that: “I would not undertake to call in question, here, the legality of the appointment of this receiver, if enough appeared in the case in which he was appointed, to give jurisdiction to make the appointment. But an examination of the answer contained in the record, will show that there was no such jurisdiction.”
*138 This places the inquiry upon the true ground. It will be conceded that if there was jurisdiction to make the appointment, no mere errors or irregularities can avail to expose the appointment to collateral attack. Did the facts stated in Sneath’s petition authorize the appointment of a receiver of the property of the shoe company ?
Section 5845 (Rev. Stats.) provides that: “a surety may maintain an action against his principal, to compel him to discharge the debt or liability for which the surety is bound after the same becomes due.” This provision was a clear legislative recognition of a familiar remedy which equity afforded a surety at the time of its enactment.
It was alleged in Sneath’s petition that he was surety of the shoe company for the payment of more than $20,000— all past due. That the company was insolvent. That it was making no effort to pay off the debts for which >Sneath was surety. That the business of the company could not be continued without loss and wasting of its assets. That it was necessary to sell all the property and collect all the demands of the company to pay off its debts. The right of a surety to invoke the aid of a court of equity to compel the principal to pay off the debt was well recognized. ' It will be observed that this was not a-mere right to recover a judgment and have an execution go out against the property of the principal. Indeed, it was because there was no such remedy at law that a court of chancery would lend its aid. It was necessarily a proceeding to subject the property of the principal to the payment of the debt for which the surety had become collaterally liable. Adams Eq. 270; Polk v Gallant, 2 Dev. & Bat. Eq. 397; Pride v. Boyce, Rice Eq. 287; Washington v. Tait, 3 Humph. 543; 1 Story Eq. sec. 327; 2 Story Eq. 849; Bishop v. Day, 13 Vt. 81; Taylor v. Heriot, 4 Desaus. Eq. 227. This principle was recognized and enforced at an early day by this court. In Stump v. Rogers, 1 Ohio, 533, it was said: “ A surety may ask a 'court of chancery to aid in subjecting the estate of the principal to the payment of the debt, without first advancing or paying the money, as he must do before he could sue in an action at law.” This case was *139 approved and followed in McConnell v. Scott, 15 Ohio, 401, where the court say: “ There is a great variety of circumstances, where equity steps in, for .the reason that the law affords no adequate redress, and prevents impending and threatened injury. * * * In 1 Ohio, 533, the precise question now raised received the sanction of this court, and, in our view, the authority of that case should not be shaken.” After stating that there is no remedy at law without the surety first pay the debtj, the court say: “ And such payment may be attended with great inconvenience and severe sacrifices of property — burdens which surely ought not to be imposed if they can, with propriety and justice, be avoided. In 6 Ves. 734, it is said: ‘that equity will compel the principal to pay the debt, after due, at the instance of the surety. In 4 Def. 47, ‘that it would be hard on sureties, if they were compelled to wait till judgment against them, or they had paid the debt, before they could have recourse to their principals, who might waste their effects before their eyes.’ Other cases might be cited to the same import.”
The right, then, to subject the property of the shoe company to the payment of the debts for which Sneath was surety, being clear, and the only fund out of which they could be discharged being in danger, would it have been a case for the appointment of a receiver under the chancery practice, or is it expressly provided for by our statutes ?
Section 5587 (Rev. Stats.) provides for the appointment of a receiver:
“1. In an action by a vendor to vacate a fraudulent purchase of property, or by a creditor to subject any property or fund to his claim, or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff, or of any party whose right to or interest in the property or fund, or the proceeds thereof, is probable, and where it is shown that the property or fund is in danger of being lost, removed, or materially injured.
sic*********;!;
*140 6. In all other cases'where receivers have heretofore been appointed by the usages of courts of equity.”
The jurisdiction of the court of chancery to appoint a receiver has been assumed for the advancement of justice and is founded on the inadequacy of the remedies to be obtained in courts of ordinary jurisdiction. Kerr on Rec. 1. It was said by the Lord Chancellor in Bainbridge v. Baddeley, 3 Mac. & Gor. 419 : “ There are few cases that can be stated in which the court has not jurisdiction, when it is essential to the justice of the case to interfere to preserve the property for the party entitled, by the appointment of a receiver.”
“ If the remedy afforded by the courts of ordinary jurisdiction is inadequate for the purposes of justice, the court of chancery will, on a proper case being made out, ex debito justitioe, appoint a receiver.” Kerr on Rec. 2. In Skip v. Harwood, 3 Atk. 564, Lord Chancellor Hardwieke spoke of the power to appoint a receiver as “ a discretionary power exercised by courts, of chancery with as great utility to the subject as any sort of authority that belongs to them.” “ No positive or unvarying fule can be laid down as to whether the court will or will not interfere by this kind of interim protection of the property.” Kerr on Rec. 4.
Sneath certainly had an interest in the preservation of the property of the company, for the purpose of applying it to the discharge of the. debts, and it clearly appears that that property was “ in danger of being lost, removed, or materially injured.” It also seems clear that it would have been a proper case for the interposition of a court of equity to preserve the only fund out of which the surety could compel the discharge of the debt. In either case it came within the express provisions of our statute.
It must be borne in mind that here was an acting receiver. There was at least the form of a legal appointment, and that in a case which certainly invoked the discretion and consideration of the court in the determination of the question whether an appointment could or ought to be made. This was jurisdiction. The court acted. The appointment was made. The receiver proceeded to the discharge of the duties *141 of the trust. This is not a direct proceeding to test the validity or regularity of the appointment. It is not a proceeding in error to review the order of appointment. It is a collateral inquiry. It is not enough that the court erred in its action. Unless it appear manifestly clear to us that the order of appointment was an absolute nullity by reason of the entire absence of jurisdiction in the court that made it, it cannot be assailed in this proceeding. Tyler v. Whitney, 12 Abb. Pr. 465; s. c., sub. nom. Tyler v. Willis, 33 Barb. 327; Cadle v. Baker, 20 Wall. 650; Howard v. Whitman, 29 Ind. 557; Vermont & Canada R. Co. v. Vermont Central R. Co., 46 Vt. 792; Jay v. De Groat, 17 Abb. Pr. 36, n.; High on Receivers, secs. 203, 225.
Citing and approving the decision in ease of Cadle v. Baker, supra, the supreme court of the United States in the case of Sanger v. Upton, 91 U. S. 56, applied the same rule to the case of an assignee in bankruptcy, and held that, an order of court that an assignee in bankruptcy should proceed to collect a demand, was conclusive as to the right of the assignee to .bring suit thereon; and that the defendant in the" suit could not draw into question the validity of the order.
Our conclusion is, however, that the appointment was authorized and valid. There was no error in the j udgment of the common pleas, and in reversing it there was error for which the judgment of the district court is reversed, and that of the court of common is affirmed.