PHILIP REYBOLD AND THE FARMERS BANK OF DELAWARE,
AT NEW CASTLE,

*vs.*

WILLIAM HERDMAN, Sheriff, JOHN S. VAN DYKE and Jane
his wife, ENOCH ROBERTS, administrator, d. b. n., of
ELIZABETH VAN DYKE, deceased, AND ALEXANDER J. VAN
DYKE, NICHOLAS VAN DYKE AND CHARLOTTE JANE VAN
DYKE, children and heirs at law of JANE VAN DYKE, de-
ceased, infants, defending by their guardian *ad litem*,
JOHN S. VAN DYKE.

*New Castle, Sept. T.* 1837.

The proceeds of lands sold under a mortgage are applicable only to liens
and incumbrances against the mortgagor, and not to liens paramount
to his title.

The grantor in a deed conveying a lot of land to R., executed a bond of
indemnity to R., against a mortgage of the same lot to T.—also against
certain paramount liens affecting the land. The bond of indemnity
was accompanied by a mortgage to R. of other lands, also covered
by the mortgage to T. The lot conveyed to R., and also the other lands
embraced in the mortgage of indemnity to him, were all sold by the
sheriff under the mortgage to T. *Held*, that R. was entitled, in equity,
to be indemnified for the loss of the lot, out of the proceeds of the
other lands mortgaged to him for an indemnity;—that he had not,under
the indemnity bond accompanying the mortgage, a sufficient remedy
at law to bar relief in equity.

Equity will, in some cases, decree the performance of a general covenant
of indemnity, though it sounds only in damages, upon the principle
on which the Court entertains bills *quid timet.*

Parties claiming separate and distinct interests in the subject matter of the
suit cannot be joined as complainants in the same bill. But, in such
case, if one only be entitled to relief, the Court may grant leave to
amend the bill by striking out the name of the complainant who is not
entitled to relief.

BILL IN EQUITY, filed under the following circumstances.—John S. Van Dyke was indebted to sundry creditors. and, among others, to Edward Tatnall in the sum of $210.00, secured by his judgment bond and also by a mortgage dated the 18th of October, 1823, executed by himself and Jane his wife, of certain real estate which had descended to the wife from her deceased father, Alexander Jamison. The premises mortgaged embraced a marsh lot, containing ten acres, and also some other lands. Under a *scire facias* upon this mortgage, issued May 28th, 1827, a judgment was recovered in the Court of Common Pleas for New Castle county and a *levari facias*, returnable to the May T. 1828, was issued thereon and directed to William Herdman, one of the defendants, then sheriff, to be executed. Under the *levari facias* the premises were sold for the sum of $1800.00. The property mortgaged had descended to Jane Van Dyke, one of the mortgagors, subject to the lien of certain judgments against her father, Alexander Jamison, recovered in his lifetime, and, among other judgments, subject to one which the Farmer's Bank at New Castle, one of the complainants in this suit, had recovered in the Supreme Court for New Castle County on the 27th of September, 1816, for $560.00; on which judgment there remained due a balance of $487.23. The ten acres of marsh, part of the premises mortgaged to Tatnall, were afterward by deed dated the 8th of April, 1826, conveyed by Van Dyke and wife to Philip Reybold, the other complianant, for the consideration of $210.00. On the 22d of the same month (April) Van Dyke and wife executed and delivered to Reybold a mortgage of the residue of the lands which had been included in the mortgage to Tatnall. It was not the object of the mortgage to Reybold to secure the payment of a sum of money, but it was executed as a collateral security to a bond of indemnity given to Reybold, to indemnify him with respect to the ter. acres of marsh against the prior mortgage to Tatnall,

which covered the marsh and also against certain unsatisfied judgments recovered against Alexander Jamison in his lifetime.    The fund of $1800.00 in the Sheriff's hands was raised by the sale of all the lands covered by the mortgage to Tatnall, including the ten acres of marsh which had been conveyed to Reybold and the premises embraced in the mortgage of indemnity to Reybold.    On the return of sale by the Sheriff, and that he held the proceeds, ($1800.00,) the Sheriff was ruled to bring the money into the Court of Common Pleas; and that Court ordered the payment thereout of the sum due upon the Tatnall mortgage ($582.09,) and afterward directed the residue to be paid back to the Sheriff, to be by him applied according to law.    After deducting costs and expenses there remained in the hands of the Sheriff a balance of $1140.69, subject to the rights of the parties to this suit.

The bill was filed by both the Farmer's Bank and Philip Reybold, setting forth the above facts.    The claim of the Bank was to have its judgment against Alexander Jamison paid out of the proceeds of the sale under the mortgage of Van Dyke and wife to Tatnall.    Reybold claimed to be indemnified out of the same proceeds of sale for the loss of the ten acres of marsh, his title to which, under the deed from Van Dyke and wife, had been divested by the Sheriff's sale under the mortgage to Tatnall—the indemnity claimed being the repayment of the purchase money with interest.    The complainant, Reybold, also sought to be relieved against a judgment, alleged to be fraudulent, which was held against Van Dyke by his sister, Elizabeth Van Dyke, deceased, whose administrator, Enoch Roberts, was one of the defendants. This judgment was for the sum of $900.00, and was entered in the Court of Common Pleas, on the 26th of October, 1818.    The other defendants were make parties as children and heirs at law of Mrs. Van Dyke.

To this bill only one defendant, William Herdman,

the Sheriff, answered. He admitted the facts stated, and submitted himself ready to pay the money remaining in in his hands, as the same should be directed by the decree of this Court, asking leave to pay the same into court. The other defendants demurred generally to the bill, and assigned the following causes of demurrer, viz:

1. That the complainants have several and distinct interests, and are without any privity between them.

2. That the complainants have a legal remedy against the Sheriff, which is complete and perfect.

3. That, as to the judgment of the Farmer's Bank against Alexander Jamison, deceased, no title to the relief prayed is made out in the bill. That the said Farmer's Bank is not entitled, either at law or in equity, to or in any part of the proceeds of sale in the hands of the Sheriff.

4. That, as to the claim of the other complainant, Philip Reybold, arising out of the sale of the lot of marsh, and out of the mortgage of indemnity executed by Van Dyke and wife to Reybold—the claim being for unliquidated damages and the amount not ascertained, and being proper to be tried by a jury in an action at law, the complainant, Philip Reybold, has failed to make out any title to the relief prayed.

The cause came before the Chancellor, at the September T. 1837, for a hearing upon the demurrer.

*W. H. Rogers,* for the complainants.

*J. A. Bayard,* for the defendants.

JOHNS JR., CHANCELLOR.—The 1st, 2d, and 3rd objections to the bill apply to one of the complainants, the President, Directors and Company of the Farmer's Bank of

the State of Delaware. They may all be disposed of by considering the effect and operation of the sale under the mortgage to Tatnall. If the title conveyed by virtue of the sale under the *levari facias* has not affected any legal right' or remedy of the Bank, as a judgment creditor of Alexander Jamison, deceased, then, as to that complainant's claim, there can be no necessity for the interposition of this Court. The title mortgaged is the title sold. The sale by the Sheriff, under the *levari facias*, transfers it to the vendee, conveying all the title of the mortgagor—the consideration money representing his interest, and being applicable to liens or incumbrances affecting that interest. If this be not the case, then the contract of the heir by a mortgage, in the case of a bill to foreclose, would require not only the money loaned upon the mortgage to be repaid, but all judgments against the ancestor. The *scire facias*, under our act, is only a more speedy mode of enforcing payment of the sum secured; and it only contemplates a sale for so much as will pay the debt, interest and costs. If it is to be considered as having a more extensive operation, so as to sell and convey a title clear of all liens and incumbrances, as well of the ancestor as of the heir, then the judgment of the Court upon the mortgage, when proceedings are taken by *scire facias*, will have an effect much more extensive than the contract of the parties; and in all cases, where the land has been assigned to more than one heir, if only one mortgages his part, on sale thereof it may be applied to pay the debts due by judgment from the intestate, although all the lands of the intestate are equally liable and could not be sold except upon an inquisition taking all into consideration; or by order of the Orphans Court, although the heir has a right, by tendering his *pro rata* contribution, to exonerate his share. Hence, by considering the proceeds of sale under a *levari facias* upon the heir's mortgage as applicable to the judgment due from the intestate manifest injustice might be done. If I am

correct in considering the sale under the *levari facias* as transferring no more or greater interest than the mortgagor had at the time of the mortgage executed, then it follows that the purchase money only represents that interest or estate, and the vendee takes the title subject to all paramount liens and incumbrances. If so, then the proceeds of sale can only be applicable to the liens or incumbrances discharged by virtue of the sale, and must necessarily be confined to the payment of the liens or incumbrances created by the mortgagor. Hence, I apprehend the interest or estate transferred by the Sheriff's sale must be ascertained by the extent and operation of the contract under which the lien accrues. The mortgagor conveys the title as he had it, and can do no more.

John S. Van Dyke and wife held the estate they conveyed by the indenture of mortgage to Tatnall, subject to the liens and incumbrances on it created by Alexander Jamison, the intestate, from whom the land descended. They conveyed the title as it existed in them. The judgment on that mortgage could only be against the mortgagors and terre tenants. The heirs and personal representatives of Alexander Jamison deceased could not be parties. The judgment could, therefore, only affect those legally parties and their interest. Hence, the only interest sold was the derivative, or the estate of John S. Van Dyke and Jane his wife in the premises, and not the title as it existed in Alexander Jamison. That interest remained unaffected and still subject to all legal liabilities. I am, therefore, of opinion that the demurrer must be allowed with respect to the claim of the Farmer's Bank. They yet have their judgment and a full and complete legal remedy.

The next inquiry relates to the claim of the other complainant, Philip Reybold. His claim is founded on the contract of indemnity contained in the indenture of mortgage executed by John S. Van Dyke and wife,

and the bond of John S. Van Dyke and the judgment thereon. The premises mortgaged were, by the terms of the contract, conveyed to Reybold, not to secure the payment of a sum of money, but, as stated in the complainant's bill, to indemnify him against the claim under the Tatnall mortgage upon the ten acres of marsh sold and conveyed by John S. Van Dyke and wife for the sum of $210.00 to Philip Reybold, and also against the unsatisfied judgments recovered against Alexander Jamison in his lifetime. The bill states the sale under Tatnall's mortgage of this ten acres of marsh, as also of all the premises embraced in the mortgage of indemnity to Reybold. The demurrer admits the facts, as alleged, and also the amount of damage; for that is stated and claimed in the bill as being the consideration money paid for the ten acres of marsh. But this complainant not only comes for relief on the ground that he is deprived of the real estate mortgaged as an indemnity, but additionally to be relieved against the prior judgment of Elizabeth Van Dyke, which he alleges to be fraudulent. The adminstrator, d. b. n., of Elizabeth Van Dyke, deceased, has not answered, but has joined in the general demurrer. The parties on whom the fraud is charged have united in the demurrer, which insists that this complainant is not entitled to relief on several grounds;—

*First:* For want of privity between the complainants, whose interests are distinct. With respect to the Farmer's Bank this objection need not be considered; because I have already held the 2d and 3d objections to be valid against the claim of the Farmer's Bank. The claim of Reybold, the other complainant, stands upon totally different grounds. Should it be found, on examination, that the other objections are not tenable as against his claim, and that if, as a sole complainant, he would be entitled to relief, the present objection founded on the misjoinder of

the Bank as a complainant is such as could be met by an amendment of the bill.

*Second :* I shall, therefore, proceed to the next cause of demurrer, viz : that the complainant, Reybold, has an adequate remedy at law.   The mortgage to Tatnall having been given prior to that made to Reybold, it is apparent that by the sale under it any interest of Reybold in the mortgaged premises has been utterly defeated ; and unless he can reach the proceeds of the sale as representing the land he is remediless.   No process at law can affect the land ; the remedy contemplated by the mortgage *in rem* has failed.   The security by bond and the judgment thereon only affected the husband's interest.   The substantial security was the fee-simple interest of the wife, which by the mortgage was conveyed, and by the conveyance constituted the substantial indemnity.   The mortgage having been executed, not to secure the payment of a sum of money, but to indemnify Reybold as the purchaser of the ten acres of marsh, it may be considered doubtful how far the claim of Reybold by any proceeding at law upon the Sheriff's recognizance would have availed. The facts necessary to establish the right must have been ascertained and judicially decided ; and this could not be except as against parties and privies to the contract of indemnity.   Hence, the remedy at law does not appear to me to be complete and perfect.

*Third :* The remaining cause of demurrer, applicable solely to the claim of the complainant Reybold, is that the damages being unliquidated and the amount not ascertained, therefore, the complainant, Philip Reybold, has not made out a title to the relief prayed.   Under the peculiar circumstances of this case, and especially as the indemnity was based upon a liability which affected the realty, and not exclusively on a personal liability, I cannot regard this objection as tenable.   Upon this point I would refer

to the opinion of Chancellor Kent in the case of *Champion v. Brown*, 6 *Johns Ch. R.* 405. He says " there are cases to show that equity will decree the performance of a general covenant of indemnity, though it sounds only in damages, upon the principle on which the Court entertains bills *quia timet.* Thus, in *Ranelaugh v. Hayes*, 1 *Vern. R.* 189; 2 *Ch. Cas.* 146,80, K. assigned several shares of the excise to H., who covenanted to indemnify and save K. harmless from all debts, accounts, covenants and demands whatsoever, by reason of any of the covenants or agreements entered into by K. and contained in the letters patent, &c. K., being sued by the King, filed his bill against H. and prayed for a performance of the agreement in specie, alleging that the defendant wholly refused to perform the covenants on his part, but in breach thereof permitted K. to be sued by the King. It was not charged, nor proved, that any rent was actually in arrear; and the defendant objected to the suit, as being founded on a personal covenant of indemnity, which sounded only in damages, and for which the plaintiff had his remedy at law. But Lord Keeper North decreed a specific performance and directed a reference to a master to tax the damages, and that, as often as any breach should happen, he should report the same specially to the Court, and that H. ought to be decreed to clear K. from all these suits and encumbrances within the reasonable time of a year. He compared the case to that of a surety in a bond, for whom, though not molested for the debt, yet after the money is payable, the Court will decree the principal to discharge it; for it is unreasonable that a surety should always have such a claim hanging over him.

Sir Joseph Jekyll, Master of the Rolls, in *Lee v. Rook*, *Moseley* 318, made a similar observation in respect to the rights of a surety. " If I borrow money," says he, " on a mortgage of my estate for another, I may come into equity (as every surety may against his principal) to have my

estate disencumbered by him, and the covenant in the mortgage deed to pay the money will bind the principal; for, the money being borrowed for him, it is his debt, and the surety is only a nominal person. And why may not the administrator come into this Court and call upon the defendants to clear the estate of P. from the covenants of P. to C. and S.?" There are many other cases, besides the one already cited, in which Chancery has sustained bills for a specific performance of personal covenants sounding in damages, and which have no concern with real estate. The case of *Ward v. The Duke of Buckingham*, cited by Lord Hardwicke, and again by Lord Eldon, 3 *Atk. R.* 385; 10 *Ves. Jr. R.* 161, may be referred to as an instance; and Lord Hardwicke held, in *Buxton v. Lister*, 3 *Atk. R.* 383, that a bill could be entertained by a vendor for the specific performance of an agreement for the sale of wood. But, in cases relating to the realty, the jurisdiction is much more freely exercised; and Lord Hardwicke took notice of a marked distinction between the two cases. In *Pember v. Mathers*, 1 *Bro. Ch. Rep.* 52, Lord Thurlow sustained a bill by the seller against the assignee of a lease for the specific performance of an agreement to indemnify and to execute a bond to secure the indemnity.

In the case before me the defendants, who were parties to the bond and mortgage of indemnity, by the covenant of indemnity undertook to indemnify and relieve the ten acres of marsh sold and conveyed to Reybold from certain claims, for one of which it has been since sold; and he now claims out of the purchase money the benefit of the covenant, the land mortgaged as security having been converted into money. The sale has deprived him of the legal remedy under the mortgage as against the mortgaged premises. I can perceive no good reason why, as the purchase money representing the land still remains within the reach of this Court, the complainant should not be entitled to relief. But in consequence of the President and

Directors of the Farmer's Bank being joined as complainants with Philip Reybold, and it appearing that the Farmer's Bank have no interest, I am of opinion that the present demurrer ought to be allowed.  See 4 *Russ. Ch. R.* (4 *Eng. Ch. Rep.*) 225, 242.  The complainant, however, has leave to amend his bill.