[Civ. No. 2670.   Third Appellate District.—April 22, 1924.]

ROSA K. JOSEPHIAN, Respondent, v. ALEX LION, Appellant.

[1] PRINCIPAL AND SURETY—EXONERATION.—The doctrine of exoneration, in equity, applies as well to contracts of indemnity as to those of suretyship.

―――――――――――――

1.   See 21 R. C. L. 1097; 25 R. C. L. 1327.

[2] ID.—HYPOTHECATION OF PROPERTY BY AGENT.—Where one person requests another to procure for the former a loan and the latter consents to do so, the relation of principal and agent is thereby created and exists; and the fact that the person thus procuring the loan becomes surety and, as such, hypothecates her property to secure the repayment of the loan cannot have the effect of changing the character of their legal relations in the first instance.

[3] ID. — ESTABLISHMENT OF RELATIONSHIP — In such a transaction, upon the consummation of the loan and the agreement of the person procuring the loan to secure or assure the repayment thereof, then the relation between the parties became that of principal and surety—the person making the request principal, because it was his debt and he promised to repay the same, and the person procuring the loan surety, because she executed the note and hypothecated her property as security for the repayment of the debt, thus becoming a surety in a double sense.

[4] ID.—APPARENT PRINCIPAL AS SURETY—PAROL EVIDENCE.—Except as against persons who have acted on the faith of his apparent character of principal, one who appears to be a principal, whether by the terms of a written instrument or otherwise, may show that he is, in fact, a surety; and such a showing may be made by parol evidence.

[5] ID.—ORAL AGREEMENT TO PAY DEBT—STATUTE OF FRAUDS—SPECIFIC PERFORMANCE.—Where one person requests another to procure for him a loan and the latter does so, giving her own note as evidence of the indebtedness and hypothecating her own property as security for the repayment of the debt, the oral agreement of the person requesting the loan to pay the indebtedness is not subject to the objection that it is void for the reason that it fails to measure up to the demands of section 1624 of the Civil Code; and the right of the person who procured the loan to compel the other to perform his obligation accrues immediately after it becomes due, and that right is available to her so long as the note executed by her remains unpaid and subject to enforced payment by the payee in a foreclosure suit.

[6] ID.—PLEADING—STATUTE OF LIMITATIONS—APPEAL—PRESUMPTION. In an action by the person who procured the loan to compel her principal to perform his obligation and pay the indebtedness, where neither the original nor the first amended complaint is contained in the record on appeal, and the second amended complaint shows that it was filed a little over two years after the note evidencing the indebtedness matured, the appellate court

4.  See 21 R. C. L. 972.
5.  See 12 Cal. Jur. 866; 13 Cal. Jur. 982; 25 R. C. L. 524.
6.  See 13 Cal. Jur. 119, 1007.

must presume, in support of the judgment of the trial court in favor of plaintiff, that, whether the action comes within subdivision 1 of section 339 of the Code of Civil Procedure or within section 337 of that code, it was brought within the statutory period.

[7] ID. — EVIDENCE — ORAL AGREEMENT — UNEXECUTED WRITTEN CONTRACT.—In such action, a proposed written agreement between plaintiff and defendant, setting forth that the money borrowed on the note was for defendant, for his own use and benefit, and that he did so use it and that he agreed with plaintiff to repay said money to the payee of said note, was properly admitted in evidence as showing the oral agreement between defendant and plaintiff, where the evidence showed that, although defendant refused to execute such proposed written agreement, he admitted, after reading it, that it contained a correct statement of said oral agreement.

[8] ID. — SPECIFIC PERFORMANCE — EQUITY — JUDGMENT. — In such an action, it is the duty of the court, sitting in chancery, to adjudicate, adjust and protect by its decree all the equities of the respective parties as the same are exposed by the evidence, including the rights of the owner and holder of the note and mortgage executed by plaintiff, where said owner and holder has been made a party defendant and he is before the court.

[9] ID.—LIABILITY FOR CONTEMPT—VALIDITY OF SECTION 2846, CIVIL CODE.—Section 2846 of the Civil Code is a valid enactment, notwithstanding the defendant is liable to a citation for contempt in case he disobeys the mandates of the decree rendered in an action founded on that section.

---

(1) 31 **C. J.**, p. 473, sec. 75 (1926 Anno.).    (2) 2 **C. J.**, p. 448, sec. 45 (1926 Anno.).    (3) 32 Cyc., pp. 35, 37.    (4) 22 **C. J.**, p. 1232, sec. 1643.    (5) 27 **C. J.**, p. 185, sec. 109.    (6) 37 Cyc., p. 839, sec. 101.    (7) 32 Cyc., p. 270.    (8) 32 Cyc., p. 272 (1926 Anno.).    (9) 13 **C. J.**, p. 87, sec. 134; 32 Cyc., p. 245.

APPEAL from a judgment of the Superior Court of Fresno County. S. L. Strother, Judge. Affirmed.

The facts are stated in the opinion of the court.

Frank Kauke for Appellant.

C. K. Bonestell for Respondent.

---

8.   See 10 Cal. Jur. 496; 10 R. C. L. 370.
9.   See 21 R. C. L. 1110.

HART, J.—The plaintiff, claiming to be a surety upon a certain obligation upon which it is alleged the defendant Alex Lion is the principal, brought this suit to compel the latter to perform said obligation, the same being due. The action was brought upon the authority of section 2846 of the Civil Code, which provides: "A surety may compel his principal to perform the obligation when due."

The obligation, to enforce the performance of which is the object of this action, arose out of a transaction culminating in the execution by the plaintiff of a certain promissory note, and, as security therefor, a mortgage on certain of her real property, situated in the city of Fresno, in favor of one Lelia A. Yocum. The latter, after the obligation had run for some time, sold and transferred the same to the defendant W. A. Conn, who as such creditor of defendant Lion, was made a party defendant.

The cause was tried by the court, without the aid of a jury, and judgment passed for the plaintiff. Thereby it was adjudged that the defendant Lion pay said note, together with accrued interest, to the defendant Conn and that the latter "do accept such payment and thereupon cancel said note or deliver the same up to be canceled, and release the property . . . from the lien of said mortgage in the manner required by law." The judgment proceeds: "It is Further Adjudged that in the event of a renewal of said note and mortgage to prevent the collection of the indebtedness evidenced thereby from becoming barred by the Statute of Limitations, before its payment by the defendant Lion, or in the event of the commencement of an action to foreclose said mortgage for the same purpose, such renewal or such action shall in no way affect this judgment or its enforcement or the right to compel the payment of the indebtedness by the defendant Lion; nor shall the right of defendant Conn to demand and receive such renewal or bring such action be affected hereby."

The defendant Lion appeals from said judgment.

Lion, the appellant, is the son-in-law of the plaintiff. In the month of June, 1913, being in need of the use of the sum of two thousand dollars and being required to borrow said sum, he asked the plaintiff for a loan of said sum. The plaintiff told appellant that she was without sufficient means with which to comply with his request, and he there-

upon proposed to her that, if she would herself borrow the
money, execute a note therefor and a mortgage on several
lots she owned in the city of Fresno to secure the same, he
would pay the debt and ''hold her harmless.'' The de-
fendant Conn, an attorney-at-law, was then called upon by
appellant and asked by the latter if he (Conn) could secure
him a loan of two thousand dollars on lots 31 and 32, block
120, city of Fresno, belonging to the plaintiff. Conn re-
plied that he had a client (Mrs. Yocum), who had money
to loan, and after visiting and inspecting the property
called upon Mrs. Yocum and told her that it was safe se-
curity for the sum mentioned. The loan was finally made,
the plaintiff executing and delivering to Mrs. Yocum,
through Conn, her promissory note for two thousand dol-
lars and a mortgage on the property referred to as secur-
ity for said note. The note was dated June 13, 1913, and
was payable two years after date. It provided for interest
at the rate of eight per cent per annum, payable semi-an-
nually.

In the month of May, 1914, appellant made application
to Conn for an additional loan of five hundred dollars, to
be secured by a mortgage on the same property. Conn
presented the matter to Mrs. Yocum and she was agreeable
to the proposition. A promissory note for said sum and a
mortgage on the plaintiff's property, upon which the mort-
gage lien for two thousand dollars still subsisted, were pre-
pared by Conn and taken to the plaintiff, who thereupon
signed the note and signed and acknowledged the mortgage.
This note was dated May 9, 1914, was made payable two
years from date and called for interest at the rate of eight
per cent per annum, payable semi-annually.

In or about the month of November, 1918, Conn called
either for the payment of the notes or a renewal thereof.
The appellant, on being asked by Conn to take up the
notes, stated that ''they'' were unable then to satisfy them.
Thereupon Conn asked that a new note embracing the total
indebtedness on the two notes already held by Mrs. Yocum
be executed and delivered to him for his client, together
with a mortgage on the same property to secure the same.
This was satisfactory to appellant, and, accordingly, a note
for the sum of $3,366.65, the aggregate amount of the two
notes then held by Mrs. Yocum, and as security for the
payment thereof, a mortgage on the property referred to,

were prepared and presented to the plaintiff and she exe-
cuted the instruments, the same being delivered to Conn
for his client. This note was dated November 19, 1918,
payable one year after date, and provided for interest at
the rate of eight per cent per annum, payable semi-annu-
ally. This is the note involved in this action.

At a date subsequent to the execution of the note and
the mortgage last referred to Mrs. Yocum (who after the
above transactions intermarried with a Mr. Willis) became
insistent on the payment of the note, so Conn testified, and
he (Conn) thereupon concluded to purchase the note and
the security and did so. Conn testified that the appellant
told him that he (appellant) received the money obtained
on the note and the mortgage, that ''it was borrowed for
his benefit, and that he got it all and was going to pay it,
that he paid the interest, any interest that had been paid
was paid by him, which was a fact, . . . , that Mrs. Jose-
phian would not have to pay a cent of it; and I asked
him to put that in writing, asked him if he would sign an
agreement to that effect, and he expressed his willingness
to do so.'' This conversation occurred a few days only
before the sixteenth day of February, 1921. On the last
mentioned day Conn, after talking with plaintiff relative to
the proposed written agreement, and presumably acting for
her, prepared a writing, dated that day, to be signed by the
appellant and the plaintiff, in accordance with the agree-
ment with respect to the loan between them, as explained
by the appellant to Conn. Said agreement, after reciting
the fact of the execution of the note and the mortgage by
the plaintiff, and that the same were so executed at the
request of and for the accommodation of the appellant,
and that the latter received for his own use the whole of
the consideration for the said promissory note, to wit: the
sum of $3,366.65, and that no part thereof was received by
the plaintiff or for her account, reads: ''Now, therefore,
in consideration of the premises the parties of the first part
do hereby acknowledge to have received for their own use
and benefit the entire proceeds of said promissory note, to
wit: The sum of $3,366.65 and the parties of the first part
do hereby jointly and severally agree to pay in full upon
demand of said second party or the holder of said promis-
sory note, said promissory note and to hold second party,
her heirs and assigns harmless therefrom.''

Said writing, either on the day that it was dated or within a very few days thereafter, was submitted to the appellant. After reading the same he objected to certain words it contained and Conn said to him that the words referred to could be stricken from the writing without changing its legal effect and they were, accordingly, eliminated. What particular words were expunged from the writing the witness (Conn) did not point out. However, after the appellant had taken further time to determine whether he would sign the agreement, he refused to sign it for the reason, as given by him, that other members of the Josephian family were trying to "get the best of him" and that "he was afraid to sign anything" for fear that they would succeed. Conn stated, though, that the appellant, upon reading the proposed agreement, declared that it set forth correctly the agreement between him and the plaintiff. He further testified that the appellant paid $366.65 of the principal in February, 1922, and, as above stated, that he paid all interest which was paid on the note, with the exception of two items, to wit: The first on January 12, 1922, in the sum of $96.85, which paid the interest to November 19, 1921; the second on February 20, 1922, in the sum of $123.20, which paid the interest to May 19, 1922, said items having been paid by the plaintiff.

The fact that the money obtained on the note and the mortgage was so obtained for appellant and at his request and the fact that he received the money and used it for his sole purposes and benefit, were corroborated by several members of the Josephian family, including the plaintiff. The appellant offered no proof and did not himself testify in the case.

The facts embraced in the above statement, with the exception of certain probative facts embodied therein, which are gleaned from the testimony of Conn, are set out in the second amended complaint. The appellant demurred to the complaint on the general and on numerous special grounds and, the demurrer having been overruled, he filed an answer denying all the allegations of said complaint. He further pleaded the statute of limitations (sec. 337, subds. 1 and 2; sec. 339, subd. 1, Code Civ. Proc.), and also section 726 of the Code of Civil Procedure which provides, among other things, that "there can be but one action for

the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property, which action must be in accordance with the provisions of this chapter.''

Conn demurred to the complaint on the general ground, the same being overruled. He thereupon filed an unverified answer, denying the averments of the complaint. As to this answer, however, the verification thereof was waived and it was stipulated by counsel that all general denials therein ''shall be considered as a specific denial of all allegations controverted.''

The findings of the court follow substantially the averments of the complaint.

That a surety may maintain a suit in equity to compel the principal to pay the obligation upon its maturity is not questioned by appellant, but is conceded by him, as, in view of section 2846 of the Civil Code, no other position could be taken. The principle underlying said section is of equitable origin and cognizance, and proceeds upon that consideration of natural justice that a person shall perform his agreement, acting upon which ''a court of equity, in the exercise of well-regulated and judicial discretion, enforces the actual accomplishment of a thing stipulated for on the ground of what is lawfully agreed to be done ought to be done.'' (*Magee* v. *McManus,* 70 Cal. 553, 556 [12 Pac. 451].)

The doctrine is stated in 4 Pomeroy's Equity Jurisprudence, section 1417, fourth edition (footnote, citing California Civil Code, sec. 2846, and *Dering* v. *Earl of Winchelsea,* 1 Cox, 318), as follows: ''After an obligation becomes payable, the surety, before he has paid it, and whether he has been sued by the creditor or not, may maintain a suit in equity against the debtor—in the nature of a bill *quia timet*—to compel him to pay the debt or perform the obligation, provided the creditor can himself enforce the payment or performance and neglects or refuses to do so. The creditor is, of course, made a codefendant.'' (See, also, same author, vol. 5, sec. 2342; 2 Story, Eq. Jur., 14th ed., sec. 1011.)

While, as stated, the appellant in his briefs expressly concedes that the right to resort to the equitable remedy above spoken of resides in a surety and may be exercised

or invoked after the principal obligation has matured or the debt has become due and it has not been performed or paid, it is, nevertheless, contended by him that such remedy is not available to plaintiff for the reason that he did not at any time execute a note or mortgage, or other writing, or ever promise to pay the mortgagee the money obtained on the note and the mortgage, or at any time ever became ''a debtor, principal or otherwise, to the mortgagee.'' It follows from said premise, so the appellant declares, that the plaintiff could not be a ''surety for him,'' as alleged in the complaint.

It is further contended by the appellant that, even if the transaction is such as the complaint describes it, and that the relation of principal and surety between the appellant and the plaintiff was thereby established, still the obligation is within the statute of frauds and not enforceable, because it involved an agreement not in writing which, by its terms, was not to be performed within a year from the making thereof. It is also claimed, as the answer alleges, that any right of action which the plaintiff might have had to enforce performance of the obligation against the appellant is barred by the above indicated provisions of the statute of limitations and also by section 726 of the Code of Civil Procedure.

The foregoing points are involved in the general contention that there is no evidence in the record which supports the findings. They were raised below by the demurrer to the complaint and later by objections to the evidence offered and received in support of the allegations of said pleading.

This leads us to observe that, since the objections raised by the demurrer to the complaint were not waived at the trial by failure to object to the evidence offered, it is not only proper but not out of place to notice, at this juncture, one of two alternative points made as against the plaintiff's second amended pleading. Counsel contends that the demurrer should have been sustained for either one or the other of two reasons, to wit: 1. That as to whether the note was or was not executed by the appellant, the complaint is uncertain and ambiguous; 2. That if the allegations of the complaint are reasonably subject to the construction that the note was executed by the plaintiff, ''then

the complaint shows on its face that the money obtained from Mrs. Yocum was applied to the use of defendant Lion,'' and the transaction, therefore, merely amounted to a loan made to him by the plaintiff, ''and any cause of action that might have been maintained thereon has long since been barred by the statute of limitations.'' The proposition last suggested goes to the gist of this controversy and is practically involved in the points first above stated and will later be considered. The first proposition is clearly without merit. The complaint, after reciting the circumstances leading to the application to the plaintiff by the appellant for the loan of the money for which the note was given, alleges that the plaintiff, being herself without means to accommodate the appellant, at the latter's request, borrowed the money from Mrs. Yocum, executing and delivering to the latter a promissory note for the amount and, as security for its repayment, executing and delivering to Mrs. Yocum a mortgage upon certain of her property. These facts are set out in detail and with clearness. Nowhere does the complaint allege, nor do its allegations in anywise or in any degree so imply, that the appellant signed or actually joined in the execution of any of the notes which had been executed during the pendency of the transaction. As to the mortgage, of course, the signature of the appellant thereto as one of the mortgagors would have added no legal force to the instrument—indeed, it would have been wholly without any effect, since he owned no interest of any kind or nature in the mortgaged premises, and the complaint with equal clearness states that the note was executed solely and alone by the plaintiff as it does that the mortgage was so executed.

As to the transaction involved herein, the contention of the appellant may be stated in condensed form, as follows: That the doctrine of exoneration does not apply where, as here, a party, although he has not made himself liable to the creditor, has promised the debtor to pay the obligation and hold the latter harmless.

The plaintiff contends that her position in the transaction comes within the description of a contract of indemnity, as given by section 2772 of the Civil Code, as follows: ''Indemnity is a contract by which one engages to save an-

other from a legal consequence of the conduct of one of the parties or of some other person.''

[1]  The authorities are to the effect that the doctrine of exoneration, in equity, applies as well to contracts of indemnity as to those of suretyship. (5 Pom. Eq. Jur., 4th ed., sec. 1417; Story's Eq. Jur., 14th ed., sec. 1169. See, also, *Reybold* v. *Hardman*, 2 Del. Ch. 34, 41; *Champion* v. *Brown*, 6 Johns. Ch. 398 [10 Am. Dec. 343]; *West* v. *Chaslen*, 12 Fla. 315; *Bishop* v. *Day*, 13 Vt. 81 [37 Am. Dec. 582]; *Ardesco Oil Co.* v. *N. A. Mining Co.*, 60 Pa. St. 375; *Davis* v. *First Nat. Bank*, 86 Or. 474 [161 Pac. 93, 168 Pac. 929].) In the cases just named there was no promise made by the indemnitor or surety directly to the creditor. Thus it would seem that, whether the appellant here is technically an indemnitor or a surety, is a matter of no particular consequence in the decision of this case; for, if upon other grounds the judgment is not subject to reversal, the same may be affirmed upon either theory— that is, either upon the theory that he is an indemnitor or a surety. If the former, there being no express statute law authorizing a suit by an indemnitee against an indemnitor for a decree requiring the latter to specifically perform his agreement, the suit is, nevertheless, cognizable in equity upon the general maxim practiced in equity courts that a party should be required specifically to do that which he has promised or agreed to do, if the promise or agreement in no way contravenes public policy or is not *contra bonos mores.* We are of the opinion, however, that the plaintiff, in the transaction, acted in two different and distinct legal roles, to wit: 1. As the agent of the appellant in procuring the loan for him, and, 2. As surety.

[2]  There can be no doubt that when the appellant requested the plaintiff to procure for him a loan and she consented to do so, the relation of principal and agent was thereby created and existed. The fact that she became surety and, as such, hypothecated her property to secure the repayment of the loan could not have the effect of changing the character of their legal relations in the first instance.

[3]  Upon the consummation of the loan and the agreement of the plaintiff to secure or assure the repayment thereof then the relation between them became that of prin-

cipal and surety—the appellant principal, because it was his debt and he promised to repay the same; the plaintiff surety, because she executed the note and hypothecated her property as security for the repayment of the debt, thus becoming a surety in a double sense. The relationship of the plaintiff to the appellant in the transaction comes within the description of a surety as given by section 2831 of the Civil Code, as follows: "A surety is one who at the request of another, and for the purpose of securing to him a benefit, becomes responsible for the performance by the latter of some act in favor of a third person, or hypothecates property as security therefor."

[4] And here it may be suggested that, except as against persons who have acted on the faith of his apparent character of principal, one who appears to be a principal, whether by the terms of a written instrument or otherwise, may show that he is, in fact, a surety (sec. 2832, Civ. Code), which, of course, means that such a showing may be made by parol evidence.

The case of *Kellogg* v. *Lopez*, 145 Cal. 497 [78 Pac. 1056], is, in its facts, strikingly similar to the case at bar. There, it appears, one Lopez executed and delivered to one Anderson, as payee, his promissory note. The evidence disclosed that Anderson and Lopez and one Stackpole were stockholders of the San Mateo Coursing Association, a corporation, and made and indorsed the note for the accommodation of the association; "that this was done, in pursuance of an agreement to that effect, made at one time and as part of one transaction; that the note was then delivered to an agent of the association to be discounted for its use, and that the money was received and used by the association. Upon this state of facts," said the court, "it is clear, at least in this state, that in equity—where the 'form of the instrument may be disregarded'—the parties to the note are to be regarded as mere sureties to the association, and as such entitled to contribution from each other." (See, also, *White* v. *Fratt*, 13 Cal. 521; *Magee* v. *McManus, supra.*)

In *White* v. *Fratt* the agreement was similar to the one here, and the equitable rule that a surety may seek and be granted relief through the doctrine of exoneration in cases where the circumstances reveal peculiar equitable considera-

tions, was considered and approved, but the court declined to apply that doctrine on the ground that the plaintiff had an adequate remedy at law. The agreement involved was an indemnity bond to the plaintiff as sheriff, to hold him harmless on the sale of certain property seized under a writ of attachment. The court said that the measure of the liability of the defendants was the amount of the judgment and that, therefore, the damages resulting to the plaintiff by reason of the breach of the agreement were susceptible of precise admeasurement, for which reason, equity will refuse to interfere.

In the case of *Magee* v. *McManus* the agreement was much of the same nature as the one here. The relief sought was refused solely on the ground that the agreement found was not the agreement pleaded.

A distinction between the case of *White* v. *Pratt* and the present case will, upon comparison of the circumstances of the one with those of the other, be readily noted. It is manifest that in this case there are equitable features which are entirely absent from the case above named. Here the plaintiff is a mere accommodation surety. Her property is burdened with a mortgage lien to secure the repayment to the mortgagee of money borrowed for and received by the appellant for his sole use and benefit, and which he did so use. If she were required to rely upon her remedy at law to recover the debt from the appellant, the result to her would be the expense, inconvenience and annoyance of a foreclosure suit, and she would, moreover, be compelled to postpone proceeding against him until a decree foreclosing the mortgage was rendered and entered. The appellant, as seen, was, by virtue of the terms of his agreement, the principal, and his promise was, not to pay the judgment, but to pay the note as being his own debt. There could hardly be conceived a case where the circumstances could the more appropriately or more strongly call for the interposition of equity than the case at bar.

There is in this case no such ground for the objection that was urged and sustained in the case of *Magee* v. *McManus*, there being no claim that there is a variance between the agreement found by the court and the one pleaded in the complaint.

[5] The agreement of appellant to pay the debt was not subject to the objection that it is void for the reason that it fails to measure up to the demands of section 1624 of the Civil Code. We assume that appellant's specific contention as to this point is that his agreement falls within the provisions of said section contained in subdivision 1 thereof, which provides that "an agreement that by its terms is not to be performed within a year from the making thereof," if not in writing, or there is no memorandum thereof signed by the party to be charged, is invalid. As seen, the evidence shows that, upon the obligation evidenced by the note, the appellant became the principal and the plaintiff the surety. The facts as found correspond with the evidence and show that the legal relation between the appellant and the plaintiff in the transaction is as just stated. The obligation, as before stated, was created by the plaintiff as the agent of and for the appellant. In other words, he authorized her to secure the money covered by the note for him and his sole use, and, acting upon that authority, she procured the money, and became the surety for him on the obligation by executing the note and hypothecating her own property to secure its payment. In equity the transaction is precisely the same as if the appellant himself had actually signed the note, and this, as before suggested, upon the principle that "what ought to be done is to be considered as done" (2 Spence's Eq. Jur. 253), or, as Story puts it, "equity looks upon that as done which ought to have been done." Therefore, the plaintiff's right to compel the appellant's performance of his obligation accrued to her immediately after it became due and was available to her so long as the note remained unpaid and subject to enforced payment by the payee in a foreclosure suit.

[6] The defense based upon the statute of limitations cannot be supported. The note executed on November 19, 1918, embracing the amounts represented by the two notes, previously executed, involved a new agreement between the parties, the transaction resulting in the execution of said note and the mortgage to secure it having been carried on by and between Conn, assignee of the note, the appellant and the plaintiff. Said note, according to its terms, matured on the eighteenth day of November, 1919, and was subject

to enforcement by the foreclosure of the mortgage at any time within four years after the date of its maturity. Neither the original nor the first amended complaint is in the record, and, therefore, it is not thus made to appear when the action was commenced. The second amended complaint upon which, with the answer, the cause was tried, was filed March 8, 1922. It does not appear, nor is it pretended, that the cause of action stated in the second amended complaint is different from that stated in the original complaint. We must, therefore, presume, in support of the judgment, that, whether the plaintiff's action comes within subdivision 1 of section 339 of the Code of Civil Procedure or within section 337 of said code, it was in either case brought within the statutory time. But, upon the theory we have of this case, as it is revealed by the issues, the evidence and the findings, and as explained above, the appellant being the principal obligor on the note and the plaintiff the surety, the latter's right to enforce performance of the obligation by the appellant will exist so long as the right to sue upon the note is not barred.

The plea that the plaintiff's action is barred by section 726 of the Code of Civil Procedure proceeds upon the erroneous assumption that she is, by this action, in effect, seeking to foreclose the mortgage. The action here is in part to prevent, if thus it may be done, the foreclosure of the mortgage upon her own property.

[7] The ruling admitting in evidence the proposed written agreement between appellant and plaintiff, setting forth that the money borrowed on the note was for the appellant, for his own use and benefit, and that he did so use it and that he agreed with plaintiff to repay said money to the payee of said note, was admissible as showing what the oral agreement between appellant and plaintiff as to the transaction was, the former having admitted, after reading the writing, that it contained a correct statement of said agreement.

All the oral testimony admitted at the trial and bearing upon and explaining the agreement between appellant and plaintiff was properly allowed under the theory of the case as made by the complaint. (Sec. 2832, Civ. Code.)

[8] Counsel has not pointed out wherein there is a basis for his contention that the decree goes beyond the issues,

the findings and the conclusions of law. But we can see no ground for the contention. The complaint undoubtedly states a case under section 2846 of the Civil Code. As stated, the findings follow the averments of the complaint, and as between the findings and conclusions of law there is no inconsistency. The decree, it is true, does take care of and safeguard the rights of Conn, owner and holder of the note and the mortgage, and this was proper. The court had all the parties before it, including Conn, and it was its duty, sitting in chancery, to adjudicate, adjust and protect by its decree all the equities of the respective parties as the same were exposed by the evidence.

[9] The claim that the appellant is, under the decree, subject to imprisonment for debt, in case he disobeys the mandates thereof and is haled before the court on a citation for contempt, involves an argument which may or could be made in any case founded on section 2846 of the Civil Code, and it could be sustained only upon the theory that said section does not represent a valid enactment. The section, though, is perfectly valid, for it involves only a statutory recognition of one of the well-established doctrines of equity jurisprudence. The decree, by its own terms, becomes a lien on any property of appellant not exempt from execution. If he has no property to which the lien may lawfully attach, the liability fixed against him by the decree must stand undischarged until it can be legally satisfied, if at all. If he has no means with which to discharge his debt, upon a showing to that effect upon a citation for contempt, if any such proceeding were instituted against him, the court could not impose a condition by way of a penalty upon him until he satisfied the debt.

There are no other points requiring consideration.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.