[Civ. No. 31638. Second Dist., Div. Four. Dec. 4, 1968.]

BEVERLY HILLS NATIONAL BANK, Plaintiff and Appellant, v. JOHN D. GLYNN, Defendant and Appellant.

860

John D. Glynn, in pro. per., Hill, Farrer & Burrill and Jack R. White for Defendant and Appellant.

Loeb & Loeb, Jerome L. Goldberg, Albert F. Smith and Leon R. Shearer for Plaintiff and Appellant.

KINGSLEY, J.—John D. Glynn, defendant below, a practicing attorney who appears in this court as his own counsel, has appealed from the judgment. The trial court held Glynn liable on two promissory notes of which he was found to be the maker, refusing to find that Glynn was in reality a surety, and on a continuing guaranty for a certain loan made to James R. O'Toole. The court refused to find Glynn liable under the same continuing guaranty for two other loans made by the same borrower (O'Toole) and the bank appeals from that portion of the court's judgment denying recovery on two causes of action relating to these two loans.

Glynn, an attorney in practice for ten years, had numerous dealings during his practice with banks in which he had acted as guarantor, maker on notes, accommodation maker and pledgor.

James O'Toole, the borrower in the instant case, met Glynn in 1957. Glynn prepared wills for O'Toole and his wife. O'Toole referred tax matters to Glynn, who obtained an accountant to prepare O'Toole's tax returns. Glynn obtained a horse racing license for O'Toole and he filed a fictitious name business certificate for O'Toole.

William J. Marshall, assistant vice president of the Beverly Hills National Bank, met O'Toole in 1961 or 1962, while Marshall was branch manager of a different bank. O'Toole transferred his banking business to Beverly Hills National Bank when Marshall became loan officer of that bank.

O'Toole, who was engaged in horse racing ventures, was in debt for unpaid loans from other banks and also indebted to an individual, Ida Kaufman, for $10,000. O'Toole obtained two loans from Beverly Hills National Bank in 1963; he required additional funds and was told by Marshall that the bank could not lend him any more money unless he got someone else's continuing guaranty. No particular guarantor was mentioned by Mr. Marshall, and it was O'Toole's idea to ask Glynn to act as guarantor.

O'Toole visited Glynn's office and O'Toole told Glynn that the bank would not loan him any money without a guarantor. At this meeting Glynn left the impression with O'Toole that Glynn would act as O'Toole's guarantor, but that he wanted to speak to Mr. Marshall about it. On the same day Glynn spoke to Marshall on the telephone, although Glynn could not remember which of the events occurred first.

On February 12, 1963, Glynn, O'Toole and Marshall met at the bank. A financial statement of O'Toole, dated January 18, 1963, was on Marshall's desk, but Marshall did not recall showing it to Glynn. Glynn testified that he thought he looked at the financial statement, but that he didn't go into any detail about it. At this meeting, Glynn said he would think about the proposed deal. On February 13, the day after the meeting, the bank loaned O'Toole $3,500, evidenced by O'Toole's promissory note. The bank had previously loaned O'Toole $3,500 on February 1st. Glynn executed a continuing guaranty which bore the date of February 13, 1963, which guaranteed "all sums of money which the bank heretofore has advanced or loaned or hereafter advances or lends" to O'Toole. Glynn was not sure whether or not the continuing guaranty was actually signed on the day recited in the instrument, February 13, and O'Toole and Marshall were not sure of the date either. Glynn said he thought the instrument was

signed on February 14th or 15th, or the 25th. Glynn said he never inserted a date in the guaranty, nor was any already in but that a $20,000 limitation of liability was typed in at his office. Glynn didn't read the guaranty but he knew what a guaranty was.

Paragraph 17 of the guaranty provides that the guaranty is in force until revoked in writing. Glynn testified that O'Toole stated that Marshall said the guaranty would not be used and would be destroyed, but Marshall's testimony was to the contrary and Marshall testified that the guaranty still stood.

In addition to loans made by the bank directly to O'Toole, at least three loans were made by Glynn to O'Toole. One of them is not herein involved; the other two were made by Glynn after he had borrowed money from the bank on February 26th and March 1st, 1963, each loan being evidenced by Glynn's own promissory note payable to the bank. It is Glynn's contention that, as to these two notes, he was actually only a surety and not the principal; in support of that contention, he sought to introduce evidence that, after receiving the proceeds of the notes from the bank he used those funds to make the loans to O'Toole. The proffered evidence was excluded and judgment was entered in favor of the bank on those two notes.

The final transaction which took place in the instant case was a loan of $1,900 to O'Toole on April 22, 1963, evidenced by a promissory note executed by O'Toole.

A summary of the loans is as follows:

| Date 1963 | Maker of Note | Face Amount | Unpaid Amount | Plaintiff's Exhibit | Plaintiff's Cause of Action |
|---|---|---|---|---|---|
| Feb. 1 | O'Toole | $3,500 | $2,000 | 3 | Third |
| Feb. 13 | O'Toole | 3,500 | 3,000 | 4 | Fourth |
| Feb. 26 | Glynn | 5,000 | 5,000 | 1 | First |
| Mar. 1 | Glynn | 3,000 | 3,000 | 2 | Second |
| Apr. 22 | O'Toole | 1,900 | 1,900 | 5 | Fifth |

There is evidence that the bank did not come forward with detailed information as to O'Toole's financial condition although Mr. Glynn knew that O'Toole owed the bank money. Also there is no indication that Mr. Glynn asked for that information from the bank.

Glynn, the appellant herein, testified that it was Mr. Marshall who asked him to act as guarantor. Glynn also asserts that, at the February 12th meeting, Marshall did not disclose that O'Toole had substantial obligations to Citizens National

Bank, to Ida Kaufman, and to the Bank of America, nor did the bank disclose that a number of Mr. O'Toole's horses were incapable of being entered into various races for which they were eligible, nor did Marshall disclose other important financial information.

At the conclusion of the trial the court held that, as to the O'Toole notes of February 1 and 13, 1963, defendant Glynn had no liability as there was no consideration for notes executed prior to the time of the signing of the continuing guaranty; as to the O'Toole note dated April 22, 1963, being a partial renewal of an earlier note dated January 18, 1963, the court held defendant Glynn liable, finding consideration by the bank's forbearance on the original note by its partial renewal. The court found that defendant Glynn was a maker and not ostensible surety on the February 26 and March 1 notes, holding Glynn liable thereon. The court awarded $2,250 attorney fees plus costs to the plaintiff bank.

The judgment in favor of the bank was based on the court's finding that O'Toole, and not the bank, had secured Glynn as guarantor, that the bank's conduct was not fraudulent or misleading, that Glynn had not relied on O'Toole's financial statement in the bank's possession, and that Glynn's personal notes were signed in the capacity of maker and not surety.

Both parties appeal and the bank limits its appeal to that portion of the judgment adverse to it, which dealt with the February 1st and February 13th notes.

I

██ Glynn requests that the court dismiss the bank's separate appeal on the ground that the bank forfeited its right to appeal by accepting the benefits of a portion of the judgment in its favor. ██ However, when a judgment contains distinct and severable provisions in independent issues or causes of action, and a reversal on one will not disturb the determination of others, it is proper to accept the benefits of the determination on one issue and appeal from another severable portion of the judgment. (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 214-215 [259 P.2d 656]; *Hansen* v. *Hansen* (1965) 233 Cal.App.2d 575 [43 Cal.Rptr. 729].) ██ A party is not precluded from appealing where the portion of the judgment appealed from is not so interwoven with other provisions as to prevent an independent examination of the part challenged, and the matters or issues embraced in the challenged

part are not the same as, or interdependent on, issues not attacked. (*American Enterprise, Inc.* v. *Van Winkle* (1952) 39 Cal.2d 210, 217 [246 P.2d 935].) Since the bank in the instant case limited its appeal to its third and fourth causes of action, which dealt with the February 1st and 13th notes, and since an independent examination of these issues is possible, the bank's appeal is not dismissed.[1]

## II

 Defendant Glynn asserts that the court erred in not finding that the bank failed in its duty to disclose to him facts relating to O'Toole's financial condition. The court found that the bank owed Glynn no duty of disclosure. Glynn cites in his brief numerous cases and text book excerpts setting forth the duty of disclosure of a creditor to a surety. However, the duty of the creditor in the case where the surety is obtained by the debtor (as in the case before us) is different from the duty of the creditor, when it is the creditor who obtains the surety. Where the guarantor or surety comes forward at the request of the debtor, there is no duty of disclosure on the part of the creditor; the creditor merely has to fully and fairly answer questions put to him and conceal nothing which he himself believes might influence the surety's conduct. (*American Nat. Bank* v. *Donnellan* (1915) 170 Cal. 9, 21 [148 P. 188, Ann.Cas. 1917C 744]; *Produce Clearings* v. *Butler* (1964) 231 Cal.App.2d 494 [42 Cal.Rptr. 114].) In *Mahoney* v. *Founders' Ins. Co.* (1961) 190 Cal.App.2d 430 [12 Cal.Rptr. 114] (which reiterated the above stated rule that there is no duty of disclosure where the guarantor was obtained by the debtor), the court added (at page 439): "Conceivably a duty to disclose might be imposed upon an obligee who did not negotiate with the surety for the execution of the bond, if it is patently clear that the facts affecting the risk were misrepresented by the principal, and that the surety does not possess knowledge of the true facts." In the case before us it would certainly not have been

---

[1]Glynn moved to augment the record on appeal by inclusion of the entire deposition of Mr. Marshall. We granted the motion and the deposition has been lodged with this court. Examination thereof and of the reporter's and clerk's transcripts discloses that, although the deposition was filed in the court below, it was never offered nor received in evidence at the trial. A deposition not so offered and marked for identification may not be considered on appeal. (*Wulferdinger* v. *Pickwick Stages System* (1930) 105 Cal.App. 509 [288 P. 93].) It thus appears that our order of augmentation was inadvertently made; it is hereby vacated and we have not considered the deposition in the determination of the present appeal.

"patently clear" to the bank that Glynn did not possess knowledge of the true facts, especially in view of the long-standing attorney-client relationship between O'Toole and Glynn.

Glynn also asserts that the bank's behavior was overtly fraudulent. Without repeating the facts, the evidence is clearly sufficient to show that the bank made no actual misrepresentations to Glynn.

## III

As we have noted, the trial court held Glynn liable on the note dated April 22, 1963, which renewed an earlier note preceding the execution of the guaranty, but held him not liable on the notes dated February 1, 1963, and February 13, 1963, on the ground that (as the court found) the guaranty was not executed until February 14th at earliest and possibly not until February 25, 1963.

The theory of this ruling was that there was no consideration for the guaranty of the two February notes but that the guaranty did apply to the renewal note later executed.

Admittedly, the guaranty is not enforceable unless it was given for some consideration. Such consideration may either be the contemporaneous or subsequent loaning of money, or the forbearance to collect on an obligation previously incurred. (*Smith* v. *Compton* (1856) 6 Cal. 24; *California Bank* v. *Kenoyer* (1934) 2 Cal.App.2d 367 [37 P.2d 836]; *Kinney* v. *Jos. Herspring & Co.* (1921) 53 Cal.App. 628 [200 P. 737].)

Tested by these rules, we regard the facts in this case as showing consideration for the guaranty as applied to all three of the notes. The guaranty which Glynn signed applied, by its express terms, to "all sums of money, which the bank heretofore has advanced or loaned or hereafter advances or lends" to O'Toole. Glynn was an expereinced lawyer with a long experience in business and in banking. The language patently put him on notice that there had been earlier loans; he was engaged in a transaction by which the bank was to loan O'Toole more money. Obviously, the making of the new loan contemplated that it was to give him financing in addition to that which he had previously secured.

In *Bank of America* v. *Granger* (1931) 115 Cal.App. 210 [1 P.2d 479], the contention was advanced that the guaranty did not cover loans made *prior* to the time the guaranty was executed. The court held that by the *express language* contained

in the document, prior loans were properly covered. In *Perry* v. *Cassidy* (1959) 170 Cal.App.2d 175, 176 [338 P.2d 531], the guaranty also by its terms properly extended to loans "heretofore, now, or hereafter made." Thus a guaranty may properly apply to loans made prior to the execution of the guaranty.

The bank argues that the successive events were part of a single transaction and that, for this reason, the guaranty is supported by consideration. We think that there is merit in this contention.

In *Pacific States Sav. etc. Co.* v. *Stowell* (1935) 7 Cal.App. 2d 280 [46 P.2d 780], the court held that where the making and delivery of the note, the transfer of consideration from lender to borrower and the guaranty constituted one transaction, the consideration of the one promise supports the other and the guaranty is valid, even though the guaranty was not signed coincidentally with the signing of the note and the passing of the funds to the borrower. *Citizens Trust & Sav. Bank* v. *Bryant* (1921) 53 Cal.App. 735 [200 P. 823], also held that a guaranty was enforceable even though the guaranty bore a date three weeks later than the date of the note and mortgage, holding that, on the evidence, there was but a single transaction.

On the record before us it appears, without contradiction, that the February 13th note was executed and accepted as a part of a single transaction of which the guaranty discussed at the meeting of that date was an integral part. In light of the cases above cited, the trial court erred, as a matter of law, in finding that there was no consideration for the guaranty as applied to the February 13th note.

While the February 1st note had been executed and accepted prior to the time the guaranty was considered, the granting of the February 13th and April 22d loans on the faith of that guaranty was all the consideration required to make effective the included guaranty of the February 1st note. The finding to the contrary has no support in the record and is erroneous as a matter of law.

IV

Glynn asserts that it was error to find that he was a maker and not a surety of the February 26 and March 1, 1963 promissory notes that were executed by him as maker. Glynn asserts that the trial court erred in excluding proposed evidence to show that he was in reality a surety with respect to these promissory notes. Parol evidence is admissible by

the maker of an instrument who appears by its terms to be a principal, to show that he is in fact a surety, except as against persons who have acted on the faith of his apparent character as principal. (Civ. Code, § 2832; *Josephian* v. *Lion* (1924) 66 Cal.App. 650 [227 P. 204]; *National Bank of Commerce* v. *Schirm* (1906) 3 Cal.App. 696, 699 [86 P. 981].) However, the evidence which was offered and excluded went no further than to show that the bank was aware of the fact that the proceeds of the two notes in question were to be loaned by Glynn to O'Toole. That fact, even if proved, would not have affected the result. In the cases in which the doctrine of section 2832 has been applied, there was also evidence that, to the knowledge of the creditor, the third party (claimed to be the principal in fact) had agreed with the maker to pay the obligation to the creditor. Nothing in the evidence proffered by Glynn, as to these two notes, goes that far. The evidence is no more than that O'Toole was obligated to Glynn to repay to Glynn the moneys involved. Such a payment, had it been made, would have satisfied all of O'Toole's obligation with reference to that loan, whether or not Glynn ever paid his own notes at the bank.

█ In short, the mere fact that a lender knows that the proceeds of his loan are to be used to finance the borrower in lending transactions of his own does not, as between the creditor and his borrower,[2] make the latter a surety for the borrower's customers.

## V

█ Glynn asserts that the court erred in excluding certain other evidence. Glynn makes no references to the record and cites no case law, and these points are deemed abandoned.

█ Glynn also asserts that numerous other findings of fact are not supported by the evidence. In regard to these findings there are no references to the reporter's transcript or to case law made by Glynn. Further, there is substantial evidence to support most of these findings although Glynn's evidence is in conflict with those findings. █ Credibility of a witness is for the trier of fact. (*People* v. *Tostado* (1963) 217 Cal.App.2d 713 [32 Cal.Rptr. 178].)

## VI

The bank asserts that it is entitled to attorney's fees

---

[2]It should be noted that, in *Josephian* v. *Lion, supra* (1924) 66 Cal. App. 650, the action was between the first and second borrowers, not (as here) between the original lender and the first borrower.

incurred on appeal. A contract for reasonable attorney's fees embraces an allowance for legal services rendered for an appeal as well as during trial. (*Schwerin* v. *Shostak* (1963) 213 Cal.App.2d 37 [28 Cal.Rptr. 332]; *Dankert* v. *Lamb Finance Co.* (1956) 146 Cal.App.2d 499 [304 P.2d 199].) Although this court may fix the fee without referring the matter to the trial court (*Automatic Vending Co.* v. *Wisdom* (1960) 182 Cal.App.2d 354 [6 Cal.Rptr. 31]), the latter court is in a better position to determine the amount. Since the cases must be remanded, we refer the allowance to the trial court for consideration in connection with such additional allowance (if any) as may be required in light of the proceedings after remand.

The judgment in favor of plaintiff on its first, second, and fifth causes of action is affirmed; the judgment in favor of defendant on the third and fourth causes of action is reversed; that portion of paragraph 1 of the judgment which assesses attorney fees and costs is vacated and the trial court is directed to reassess those items in the light of this appeal and of the proceedings on remand. Plaintiff shall recover costs in this court.

Files, P. J., and Jefferson, J., concurred.

A petition for rehearing was denied on December 26, 1968. A second petition for rehearing was denied on December 31, 1968, and the following opinion was then rendered:

THE COURT.—Defendant's Glynn's Second Petition for Rehearing is denied.

 In that petition, defendant cites to us, and relies on, the opinion of the Supreme Court in *Sumitomo Bank of California* v. *Iwasaki,* filed on December 24, 1968 [70 Cal.2d 81, 73 Cal.Rptr. 564, 447 P.2d 956], after our opinion herein was filed. We have read that opinion. Not only does it not support defendant's contentions but both its language and its holding give further support to our decision in this case although, in light of *Sumitomo,* some of our language was too broad. *Sumitomo* makes it clear that the creditor owes to a credit-surety no duty of voluntary disclosure of facts that it knows about the debtor unless " (a) 'the creditor has reason to believe' that those facts materially increase the risk 'beyond that which the surety intends to assume'; (b) the creditor 'has

reason to believe that the facts are unknown to the surety';
and (c) the creditor 'has a reasonable opportunity to commu-
nicate' the facts to the surety.'' Nothing in the record of the
case at bench would support a finding favorable to defendant
as to either (a) or (b). Glynn, an experienced attorney and
business man, had signed a guaranty for a client of some years
standing, at the client's request, which guaranty contained a
specific reference to pre-existing debts. We do not know what
O'Toole had told Glynn, nor does the record show that the
bank was any more aware of the discussions between Glynn
and O'Toole than we are now. Glynn presently makes much
of an allegedly false financial statement that lay on Marshall's
desk. But, at the trial, contrary to his unsworn statements in
his briefs, Glynn went no further than to say that he
''thought'' he might have ''glanced'' at such a statement but
had not analyzed it in detail. In short, the only findings that
this record would support are that Marshall was fully entitled
to believe that Glynn knew full well the risks he ran and that
he was assuming those risks voluntarily in order to favor his
client. On such a record, *Sumitomo* compels the decision which
we reached.

The petition of appellant Glynn for a hearing by the Su-
preme Court was denied February 26, 1969. McComb, J.,
Peters, J., and Mosk, J., were of the opinion that the petition
should be granted.