[Civ. No. 632.    Third Appellate District.—December 17, 1909.]

## J. S. BOYD, Respondent, v. P. BARGAGLIOTTI, Appellant.

CONTRACT TO CONSTRUCT BRIDGE—SUPPORT OF FINDINGS—CONFLICT OF EVIDENCE—REVIEW UPON APPEAL.—In an action involving a contract for the construction of a bridge, where the record upon appeal shows a substantial conflict of evidence upon all the important issues of fact presented by the pleadings, and discloses sufficient evidence to support the findings, they cannot be disturbed upon appeal.

ID.—WRITTEN CONTRACT—ORAL MODIFICATION—PREVENTION OF COMPLETION—PLEADING—ASSUMPSIT.—Where a written contract to construct the bridge was, after the commencement of the work, modified by an oral agreement, and the completion of the work, under the modified agreement, was prevented by the defendant, the plaintiff's action for the amount due for work and labor should be in the form of *indebitatus assumpsit,* and not upon the contract.

ID.—ACTION UPON WRITTEN CONTRACT NOT MAINTAINABLE—VARIANCE.— The written contract having been modified by the agreement of the parties, no action can be maintained thereupon, since the evidence would necessarily disclose a variance between the allegation and the proof.

ID.—CONTRACT AS EVIDENCE.—In the action in *assumpsit* the written contract may be introduced in evidence by either party as an admission of the standard of value, or as proof of any other fact necessary to a recovery.

ID.—LOSS OF BENEFITS BY DEFENDANT—CARRYING AWAY OF BRIDGE BY FLOOD—INEXCUSABLE REMISSNESS.—The loss of benefits by the de-

fendant, in the carrying away of the bridge by a flood, is no defense to the recovery by the plaintiff in *assumpsit,* or upon a *quantum meruit;* since it appears that defendant's failure to derive such benefits from the work performed was occasioned by his own inexcusable remissness in failing to provide the necessary material with which to perform the work.

ID.—NO RIGHT OF DEFENDANT TO DAMAGES.—Where the evidence supports the findings of the court that the bridge was not completed within the time stipulated in the contract because of the fault and culpable negligence of the defendant, the defendant is not entitled to either liquidated or general or any damages for its breach.

ID.—INSUFFICIENT ARBITRATION.—The court properly found that no arbitration of any matters connected with the contract was had, where the decision of the arbitrators is lacking in the essentials of a valid award, and did not definitely settle the differences between the parties.

ID.—OBJECT OF ARBITRATION—END OF LITIGATION.—The object of submitting questions of difference between the parties which are within the legitimate scope of a legal arbitration is to obviate or put an end to litigation, and it is essential to the validity of the award that it should be final, and should finally determine the matters submitted to the arbitrators, thus leaving nothing to be done but to execute and carry out the terms of the award. This is true both under the common law and under the code.

ID.—CONSISTENCY OF FINDINGS—SUPPORT OF JUDGMENT.—*Held,* that in determining the consistency of the findings, they are to be taken as a whole, and construed together, and that so construed they are consistent, and amply support the judgment.

APPEAL from a judgment of the Superior Court of Mendocino County, and from an order denying a new trial. Thos. C. Denny, Judge, presiding.

The facts are stated in the opinion of the court.

McNab & Hirsch, for Appellant.

Robert Duncan, for Respondent.

HART, J.—By the terms of a certain contract entered into by and between the parties on the seventeenth day of September, 1906, the plaintiff and one J. L. Hughes agreed to construct for the appellant a bridge across Russian river, near the town of Pieta, in Mendocino county, for the sum of $575. Said contract, although made on the seventeenth day of Sep-

tember, 1906, was not signed by the parties until the thirteenth day of October of said year. By the contract, however, the defendant agreed to furnish all the materials with which said bridge was to be built, and to place the same on the bridge site, where they would be accessible to the builders. The parties of the second part (plaintiff and Hughes) covenanted to complete the erection of said bridge "within sixty working days from the date hereof." It was stipulated on the part of the defendant that he would pay Boyd and Hughes "twenty-five per cent of said $575 when fifty per cent of said work shall have been completed and the remainder of said sum, $575, at the completion of said work." The contract further contained the following clause: "And for the true and faithful performance of all and every of the covenants and agreements above mentioned, the parties to these presents covenant and agree each with the other that the sum of three hundred dollars ($300) gold coin of said United States, as fixed, settled, and liquidated damages shall be paid to the other by the failing party, if such there be." On November 26, 1906, the defendant made a payment to the plaintiff and Hughes of the sum of $200 on the contract price.

The bridge was not completed within the time stipulated in the contract, and a controversy arose between the parties upon the question whether the contractors had performed their work according to their agreement. This led to an agreement on the part of all the parties to submit the question upon which the differences between them rested to the determination of two disinterested persons, to be selected by the parties—one by the contractors and the other by the defendant. Accordingly, two persons were selected to arbitrate and decide the controversy, and, in furtherance of the agreement to arbitrate, they heard the statements of the parties to the contract, examined the contract and the specifications and inspected the bridge and finally rendered the following decision or award: "We find that said bridge is not completed in accordance with the written contract, in so far as that the railing is not in place. One strut is not in place. Three cross-rods are not in place. Bracing between piling of center pier is not in place. As far as the concrete work is concerned, the preponderance of evidence is in favor of the contractor, and we must so hold. The time limit of the written contract certainly

has expired, and no doubt the owner has been injured thereby. But we will not assess damages thereon, provided the contractor without unnecessary delay completes said structure. Provided, further, that under all the circumstances, contractor should devote at least five days' actual time of a good mechanic, to assist the owner in completing the approaches to said bridge. If the contractor does complete said structure, fully and in accordance with each and every stipulation herein contained, then, it is our judgment, that the contractor shall be entitled to the compensation, as it is contained in the original contract.''

The submission of the controversy to arbitration was not in writing, and it is not pretended, and obviously it could not be, that the arbitration herein mentioned is the proceeding authorized by sections 1281 to 1290, inclusive, of the Code of Civil Procedure.

In February, 1907, however, the bridge was carried away by the force of the high waters of Russian river, and whether the contractors completed the bridge according to the terms of their agreement, or, if they did, whether their default in so completing it within the time prescribed by the contract was excused because of the conduct of the defendant, constitute the principal propositions in the case and from which arise all the legal points upon which appellant asks for a reversal.

The defendant claims that the plaintiff and Hughes failed to complete the bridge in accordance with the stipulations of the contract, and upon such claim refused to pay to the contractors the balance which they claimed was due them under said contract.

The complaint contains several distinct counts, all, with the exception of one, being pleaded in the form of a general *assumpsit,* to wit: For ''lumber and material, and work and labor and money laid out and expended,'' by the plaintiff, in the sum of $226.70; 2. For ''labor performed and for moneys laid out and expended by said plaintiff and said Hughes for said defendant,'' of the value of $46.05; 3. The balance due under the terms of the contract, to wit, the sum of $375.

The first and second counts are upon a *quantum meruit.* It may here be stated that, under an oral agreement made between the parties subsequently to the execution of the writ-

ten contract, there were some deviations in the erection of the bridge from the original specifications, and hence the plaintiff not only declared upon the contract but also counted upon the unpaid balance thereunder in the form of a common count, or in *indebitatus assumpsit.* The complaint further pleads an assignment to plaintiff by Hughes of all his right to and interest in the claims pleaded in the complaint.

The answer denies each and all the material allegations of the complaint, and, furthermore, and in addition to general damages, sets up a number of counterclaims—one in the nature of damages for loss of lumber alleged to have been sustained by the defendant through the negligence of plaintiff and Hughes, and others, for the reasonable value of the use of defendant's tools and implements; for rent and occupation of a house and barn while the bridge was in process of construction; for labor performed for plaintiff and Hughes "at their special instance and request"; for wines and vegetables furnished to the said contractors at their request, and for the alleged liquidated damages provided for in the contract for negligently failing to complete the contract within the stipulated time. The answer, moreover, pleads the award of said arbitrators as a defense and also in abatement of the action.

The prayer of the answer is for affirmative relief by way of general damages, liquidated damages and for a sum on account of the other claims alleged in said answer to be due defendant.

The defendant also filed a cross-complaint making Hughes a party thereto, wherein the contract between the parties is pleaded, failure of the contractors through inexcusable negligence to complete the bridge is alleged and general damages, in addition to those fixed by the contract, pleaded and prayed for.

Boyd and Hughes answered the cross-complaint, denying each and all of the material allegations thereof.

The court found in favor of Boyd and Hughes upon all vital points, and accordingly rendered and entered judgment in favor of Boyd for the sum of $562.75, and in favor of Hughes, as defendant to the cross-complaint, for costs. This appeal is from said judgment and the order of the court denying Bargagliotti's motion for a new trial.

Among other things, the court found: That Boyd and Hughes completed the bridge according to the specifications of the contract, but not within the time fixed by the contract; that their failure to complete it within said period of time was due to no fault of the contractors, but solely to the negligence of Bargagliotti in failing to furnish the material with which to construct it; that the claims pleaded in the first and second counts of the complaint were for money expended, services, etc., in connection with the erection of the bridge; that, as to the claim for the sum of $226.70, alleged in the complaint as being the reasonable value of "lumber and materials, and work and labor performed, and money laid out and expended, by plaintiff for said defendant," the sum of $167.45 was the reasonable value thereof, and that the same was due Boyd from Bargagliotti on that account; that as to the second count, wherein it is alleged that plaintiff and Hughes performed labor and expended money "at the special instance and request" of appellant, of the reasonable value of $46.05, the sum of $20.30 was the reasonable value of such services and the money so expended. The court further found that the sum of $375—the balance due under the terms of the contract—was still unpaid and due plaintiff, and "that said work and labor so performed by said plaintiff and said Hughes under said contract was and are reasonably worth the sum of $375."

The court further found against all the allegations of the answer upon which affirmative relief was asked by the defendant. The court also found that the differences between the parties were not, as a matter of fact, submitted to arbitration, and that the sum of $300 (fixed in the contract as liquidated damages for failure upon the part of either of the parties thereto to comply with the vital terms thereof) "is not and was not, at the time of the commencement of this action, or any other time, due or owing from Boyd and Hughes, or either of them, to the cross-complainant, Bargagliotti," etc.

The appellant makes these points, upon which he claims to be entitled to a reversal of the judgment and order: 1. That the evidence is insufficient to justify the findings; 2. That the plaintiff, having counted on a *quantum meruit* as to the value of the services performed in pursuance of the terms of the written contract, waived his right to reply upon the express

contract, and the defendant having received no benefit from the labor so performed, the bridge having been destroyed before completion and prior to its acceptance, the plaintiff cannot recover on a *quantum meruit;* 3. The arbitration abated the action; and 4. Certain errors of law occurring at the trial.

1. There exists a substantial conflict in the evidence upon all the important issues of fact presented by the pleadings. It will not be necessary to examine in detail all the evidence presented by the record, it being sufficient to say that the record reveals enough evidence to justify and support the findings. It is necessary, however, to refer to the evidence in a general way in order that some of the legal points urged by the appellant may be the better understood.

It appears that at some time prior to the making of the contract between the parties to this litigation an old bridge, which had been erected and maintained across the Russian river about a mile distant from the site of the bridge involved here, had been swept away by the high waters of the stream. Such of the materials of the old bridge as remained intact— piling and the like—were to be removed by the defendant to the site of the new bridge and used by the contractors in the erection of said last-mentioned bridge. Boyd and Hughes undertook to remove the piles of the old bridge from the bed of the river, but experienced considerable difficulty, on account of the depth of the water at that point, in doing so. In fact, many of the piles they were required to saw off at as near their lower extremity as the condition of the river, as to quantity of water in its bed then, would permit. It was soon discovered that some of the piling thus secured would be entirely unsuitable for the purposes of the new bridge, and this finally led to an oral agreement, in the month of October, between the parties to the effect that cement should be used to brace the center pier of the bridge in the place of the piling called for by the written contract.

The principal contention of Bargagliotti here is that the contractors failed to complete the bridge either within the time stipulated and limited by the contract or within a reasonable time after the so-called award by the arbitrators. The oral agreement, to which reference has been made, necessitated some delay, and, according to the testimony of Boyd and Hughes, Bargagliotti expressly acquiesced in such delay.

By the written contract, as we have seen, the defendant (and we shall hereafter refer to Bargagliotti as "the defendant") agreed to furnish and place or cause to be placed at the site of the bridge, so that it would be readily accessible to the contractors, all materials necessary for the construction of the bridge.

Boyd testified (and he was corroborated upon the point by Hughes) that the delays which occurred in the work on the bridge were occasioned by the neglect of the defendant to readily furnish the materials from which the structure was to be built. Boyd said: "There was a delay in not having the piling there in the neighborhood of two weeks. . . . There was other delay on account of flooring necessary for the construction of the bridge that necessitated our stopping work. . . . There was a delay of about a week on account of waiting for lumber."

Hughes testified, in part: "There was a change made in the plan with reference to that center pier. We were to put in ten barrels of cement and whatever gravel it would take to mix it up in this center pier in lieu of putting in these pilings on each side. . . . There was something said at that time about an extension of time on account of the change being made. Mr. Bargagliotti allowed us an extension of time —as near as I could say, he didn't say any definite time to do it or anything. Mr. Bargagliotti made the proposition of change." Hughes continued, saying that they were delayed in the completion of the bridge because the defendant failed to have necessary material on the ground. On one occasion, he said, they were delayed two weeks and on another about ten days, on account of the neglect of the defendant to have material in readiness. These delays, it must be understood, were in addition to the delay due to the change of the material with which the center pier was to be braced.

Both Boyd and Hughes testified that, prior to the so-called submission to arbitration, they had completed the bridge. One of the points of controversy between the parties was whether it was the duty of the contractors to place a railing on the bridge. The specifications are silent on this point, and the contractors claim that they made no agreement to put on railing. Another point of divergence between them was as to quantity of cement which was to be used in the concrete brace

to the center pier of the bridge. Boyd and Hughes testified that they were, under the oral agreement, to furnish ten barrels of cement only, and that they furnished that quantity of cement. The defendant, it is true, contradicts Boyd and Hughes and other witnesses produced by them on the question of the causes of delay, as well as upon all the other important points involved in the controversy, but this only creates such a conflict as estops this court from declaring, as a matter of law, that the findings are not sustained by the evidence.

Both Boyd and Hughes testified that, after the award was made by the arbitrators, settling the question whether the bridge had been completed according to the plans and specifications, they expressed willingness to Bargagliotti to do the work which the arbitrators had decided ought to be done on the bridge as soon as the defendant could get the material necessary to do so and place it at the bridge site. Bargagliotti, they said, replied that he desired to wait until he could secure the services of neighbors in building the approaches (these the defendant had agreed to build) and that then all the final work could be done at one time. Plaintiff and Hughes further testified that on several occasions after the "award" they went to the bridge to perform the work, but there was no material at hand for the purpose. Once Hughes called at defendant's residence to propose to go on with the work, but defendant was not at home. On these points, too, they are contradicted by the defendant, but again we are confronted with a situation in which there is presented a substantial conflict in the evidence. It was, as is well understood, for the trial court to say on which side the truth prevailed or the evidence preponderated, and having found with Boyd and Hughes upon the proposition whether the failure to complete the bridge within the stipulated time was caused by the neglect of the contractors or that of the defendant, we are not at liberty to declare that the conclusion is erroneous.

As to the other counts of the complaint the same conflict exists in the evidence, and the findings thereon cannot, therefore, be disturbed by this court.

2. The course of the plaintiff in pleading the indebtedness under the contract in the nature of a common count, or *in-*

*debitatus assumpsit,* was proper under the circumstances as disclosed by the evidence.

We have already seen that the written contract, subsequently to its execution and after work on the bridge had progressed to some extent, was modified by an oral agreement of the parties, and that the completion of the work was prevented by the conduct of the defendant, and it has frequently been held in this state that "where the entire performance of a special contract has been prevented by one of the parties, or where its terms have been afterward varied by the agreement of both parties, the action for the amount due for work and labor should be in the form of *indebitatus assumpsit,* and not upon the contract. In such case the contract may be introduced in evidence by either party as an admission of the standard of value, or as proof of any other fact necessary to the recovery." (*Reynolds* v. *Jourdan,* 6 Cal. 112, the opinion being by Chief Justice Murray.) The rule as thus stated has uniformly been followed in this state wherever the precise question has arisen. (See *Castagnino* v. *Balletta,* 82 Cal. 250, [23 Pac. 127], and *Adams* v. *Burbank,* 103 Cal. 646, [37 Pac. 640].) The contract, after its execution and after work had been performed in pursuance of its terms, having been altered in a material particular by agreement of the parties, it is obvious that had plaintiff declared upon the instrument as it was originally made he would, at the trial, have encountered a variance between the proof and his pleading, for it would necessarily transpire, in view of the modification referred to, that the terms of the written contract had not been carried out.

But, in any event, even if it be assumed that the count is upon a *quantum meruit,* the position of appellant would not be maintainable, since his failure to derive benefits from the work performed by the contractors was occasioned by his own inexcusable remissness. The truth is, according to the findings, the defendant himself was guilty of a breach of the contract by his negligence in failing to provide, as it was required by the contractors, the necessary material with which to perform the work, and whether the count under consideration be a common count or a *quantum meruit,* it is no defense to say in this action that the defendant received no benefit from the labor performed.

3. The claim that the defendant was entitled to a judgment for the liquidated damages prescribed by the contract because the contractors failed to complete the bridge within the time fixed by said contract is without merit, as is likewise the contention that the court should have awarded defendant damages, set up in the answer by way of recoupment to the claims counted upon in the complaint, for loss of lumber, rent of house and loan and use of tools, implements, etc., and for general damages. If the evidence, as we have held to be the fact, supports the findings of the court that the bridge was not completed within the time stipulated in the contract because of the fault and culpable negligence of the defendant himself, then clearly the defendant is not entitled to either liquidated or general or any damages. Upon the questions involving the alleged claims for the use of the tools and implements referred to in the answer, and for rent alleged therein to be due the defendant for use and occupation of a house and barn, and for wines and vegetables alleged to have been furnished Boyd and Hughes by Bargagliotti during the progress of the work on the bridge, the evidence discloses a sharp conflict, and the findings thereon cannot, consequently, be disturbed.

4. The court was right in finding that no arbitration of any matters connected with the contract was had. The object of submitting questions of difference as to the rights of parties which are within the legitimate scope of a legal arbitration is to obviate or put an end to litigation, and it is essential to the validity of an award that it should be final— that it should finally determine the matters submitted to the arbitrators, thus leaving nothing to be done but to execute and carry out the terms of the award. (*Porter* v. *Scott,* 7 Cal. 312; *Jacobs* v. *Ketchum,* 37 Cal. 197; *Pierson* v. *Norman,* 2 Cal. 599; 3 Cyclopedia of Law and Procedure, p. 693. and cases cited; 2 Am. & Eng. Ency. of Law, 2d ed., pp. 749, 751.) This is true both under the common law and under the code. (2 Blackstone's Commentaries, 4th Cooley's ed., p. 17; Code Civ. Proc., secs. 1281-1290, incl.)

In the case at bar, the proceeding, called an arbitration, was not, as is obvious, an arbitration under our code. But, assuming it to have been good as a common-law arbitration, as counsel for appellant contend, the decision of the arbi-

trators itself is lacking in the essentials of a valid award. No damages are assessed or awarded against the contractors, nor is there any other determination involved in the award which definitely settles the differences between the parties. It merely points out, as we have seen, certain particulars in which the arbitrators deemed the bridge to be uncompleted under the terms of the contract. This still left to be determined later whether, assuming that they had proceeded to comply with the requirements of the decision of the arbitrators, the contractors had in fact done as directed by the award. In other words, assuming that the contractors had undertaken to comply with the terms of the award, the defendant would still have been at liberty to object that the work had not been performed as required by the award, and no one would doubt his right to so defend in an action against him to recover on the contract.

5. It is argued that certain of the findings are uncertain and contradictory. This contention is founded on the following language of one of the findings based on an allegation in the cross-complaint: "That said Boyd and Hughes did not fail and neglect to complete said bridge in any manner whatever or fail to comply with their contract, *and if there was any failure to complete said bridge in any respect, such failure was due entirely to the failure of said defendant, Bargagliotti, to furnish the necessary materials to* complete said bridge." The italicized portion of the foregoing finding is the subject of the criticism to which we refer, and there can be no doubt that, if it stood alone upon the proposition to which it relates, it would afford little support to the judgment. But the court not only in other findings but in the very one from which we have quoted distinctly and unqualifiedly finds that "said bridge was not completed within sixty working days from September 17, 1906, but the failure to complete the same was not due to the negligence or carelessness on the part of said plaintiff, Boyd, or said Hughes"; that the failure to so complete the bridge was caused by the neglect of Bargagliotti to comply "with his part of said contract," etc. The findings amply support the judgment.

6. We have found no prejudicial error in any of the rulings of the court.

As before stated, the findings upon all the vital questions ·of fact in the case are sufficiently supported by the evidence, and no reason appears justifying a reversal of the judgment .and order.

The judgment and order appealed from are affirmed.

Chipman, P. J., and Burnett, J., concurred.