[Civ. No. 34569. First Dist., Div. One. Feb. 26, 1976.]

TOM TROLLOPE et al., Plaintiffs and Respondents, v.
JAMES B. JEFFRIES, Defendant and Appellant.

**COUNSEL**

Thorne, Clopton, Herz & Stanek and Richard W. Herz for Defendant and Appellant.

Horan, Lloyd, Dennis & Farr, Noland, Hamerly, Etienne & Hoss and Laurence P. Horan for Plaintiffs and Respondents.

**OPINION**

**MOLINARI, P. J.**—Defendant James B. Jeffries (hereinafter "Jeffries") appeals from the judgment entered in conformity to an order confirming the award of an arbitrator. Plaintiffs, Tom Trollope and Bernice E. Trollope (hereinafter jointly referred to as the "Trollopes"), have moved to dismiss the appeal on the ground that Jeffries "has waived his right to appeal by voluntarily accepting the benefits of the judgment, to wit: $128,000 awarded him by the arbitrator in his Interim Order of October 8, 1970, said order being confirmed by a judgment in the Superior Court

of the State of California in and for the County of Monterey on November 15, 1973."

The pertinent facts leading up to the judgment are as follows:

After forming a partnership in April 1968 for the development of a parcel of real property to be leased from Del Monte properties, with expected profits to be split 50 percent to the Trollopes and 50 percent to Jeffries, the partners executed a 99-year lease for a 20-acre parcel of land located in Monterey County. In 1969 construction commenced on 5 acres of the 20-acre parcel.

In the later part of 1969, when a dispute arose between the parties, resolution of the dispute was sought through arbitration, consistent with an arbitration stipulation executed by the parties. That stipulation provided, in pertinent part, "that the decision of William C. Marsh [the arbitrator] on any future differences, controversies or disagreements submitted to him shall be final and all parties agree that judgment upon any award or decision rendered by said William C. Marsh may be entered in any court having jurisdiction thereof."

On January 9, 1970, after a hearing, Marsh made and issued his award (entitled "Award of Arbitrator") in which he determined, in relevant part, as follows: that an annual accounting was to be made in accordance with the partnership agreement and a final accounting was to be made upon dissolution of the partnership; that the partnership was to pay all of its due indebtedness; that the capital contributions of the partners were found to be equal; that the partnership was thereby dissolved provided that the effective date of the dissolution was to be the date of the earlier of the following events: "(a) Sale of the partnership assets. (b) Placement of the permanent mortgage financing"; that the Trollopes were appointed the liquidating partners and were to complete the apartment house project and place it in the open market for sale; and that Tom Trollope was to "inform Jeffries of the details of any offer for purchase in which Tom Trollope concurs."[1]

The award provided, further, that pursuant to a written stipulation of the parties which was attached to and made a part of the award, the jurisdiction of Marsh was to continue to determine the following issues: employment of a resident manager; execution of a management

---

[1]The award provided for the arbitration administrative fees and the remuneration of the arbitrator.

contract; annual and final accounting of the partnership; sale of the partnership assets; and any other issue concerning liquidation of the partnership which the parties stipulate may be submitted to arbitration. The stipulation provided, further, that "The decision of William C. Marsh on any future differences, controversies or disagreements submitted to him shall be final and all parties agree that judgment upon any award or decision hereby by William C. Marsh may be entered in any court having jurisdiction thereof."

On August 14, 1970, further hearings were held by the arbitrator, followed by his issuance of an "Interim Order" which set forth conditions for bidding on the partnership assets. These conditions provided for sealed bids, a minimum bid of $1,950,000, and an opportunity for increased bids when the sealed bids were opened. All bids were to be "cash to loan."

At a bidding session on September 21, 1970, the Trollopes made the final high bid of $2,015,000. On September 3, 1970, the arbitrator made an "Interim Order" that the partnership assets be sold to the Trollopes at the price bid by them. The order provided that the terms were to be "cash to loan," the buyers were to deposit $10,000 upon notice of the opening of an escrow and "the remainder of the necessary cash" was to be deposited by October 1, 1970; and that upon a failure to meet the conditions of sale by the Trollopes, Jeffries would have a 10-day option to purchase the property for $2,005,000 and 30 days within which to meet the conditions imposed by the arbitrator for the sale of the partnership assets.

As of October 2, 1970, the Trollopes had deposited $320,000 in cash and $30,000 in securities in the escrow. An issue arose between the parties as to the meaning of "necessary cash" in the arbitrator's order. Trollope made a demand for further arbitration. Jeffries' attorney, by letter, noted the disagreement and stated "the arbitrator can determine the amount of cash to be placed in escrow by making the decision as to whether or not Mr. and Mrs. Trollope are entitled to 'certain credits.'"

A further hearing, held October 6, 1970, resulted in the arbitrator's determination that "cash to loan" meant that the Trollopes must deposit an additional $25,000, and that upon such deposit the escrow could close. An order commemorating this determination (entitled "Order For Disbursement of Funds From Escrow Account and Classification of Order of September 3, 1970") issued on October 8, 1970. That order (to

which order and subsequent confirmations Jeffries takes exception by appeal) contained a provision that upon the closing of escrow Jeffries was to receive $128,000 from the escrow account.

The Trollopes thereupon deposited the sum of $25,000 into the escrow and the escrow was closed. On October 16, 1970, Jeffries filed a complaint in the superior court to set aside the award. The Trollopes moved, inter alia, for a stay of the proceedings and a remand to the arbitrator on the ground that since the dispute involved whether the necessary conditions of sale were performed it was a matter subject to further arbitration. While this motion was pending, Jeffries, on November 6, 1970, accepted a check from the escrow account in the sum of $128,000. (This acceptance forms the basis of the instant motion to dismiss.)

On November 20, 1970, the motion of the Trollopes for a stay of proceedings and a remand to the arbitrator was granted. Jeffries took an appeal from this order. This appeal was dismissed by Division Three of this court. (1 Civ. 29653.)

On February 20, 1973, following further arbitration, the arbitrator made a "Final Order and Award" providing for the disbursement of monies to various parties, for a modification of the interim order of October 8, 1970, reducing the award to Jeffries from $128,000 to approximately $122,000, confirming the compliance by the Trollopes with all preexisting orders of the arbitrator, and confirming the sale to the Trollopes.

On May 22, 1973, the Trollopes moved for an order confirming the arbitrator's award and for entry of judgment. The superior court issued its findings of fact and conclusions of law on October 1, 1973. The court found, inter alia: that all escrow and other disbursements were properly made; that the Trollopes had complied with the arbitrator's interim order of September 3, 1970; that the arbitrator's subsequent determination that the escrow should be closed was proper; that Jeffries had not raised any default by the Trollopes concerning the sale of the partnership assets prior to October 8, 1970; and that "the arbitrator had continuing jurisdiction . . . through and after October 8, 1970 . . . ."

On November 15, 1973, the superior court made its order confirming the award of the arbitrator, and judgment in conformity with this order was entered on November 16, 1973.

Jeffries' appeal is premised on assertions that the interim order of October 8, 1970, confirmed by the final award of February 20, 1973, was procured by fraud, that in making the order of October 8, 1970, the arbitrator exceeded his powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted. The Trollopes argue that Jeffries waived his right to appeal when he voluntarily accepted the sum of $128,000 directed to be paid to him by the arbitrator in his interim order of October 8, 1970.

We have concluded that there is merit to the contention of the Trollopes that Jeffries has waived his right to appeal by accepting the benefits of the award. The appeal must therefore be dismissed.

■ The general rule is that a party is not entitled to accept the benefits of a judgment order or decree and then appeal from it. (*Mathys v. Turner,* 46 Cal.2d 364, 365 [294 P.2d 947]; *Schubert v. Reich,* 36 Cal.2d 298, 299 [223 P.2d 242]; *Mears v. Mears,* 180 Cal.App.2d 484, 509 [4 Cal.Rptr. 618] [overruled on other grounds in *See v. See,* 64 Cal.2d 778, 785 (51 Cal.Rptr. 888, 415 P.2d 776)]; *Conlin v. Southern Pacific R.R. Co.,* 40 Cal.App. 733, 747 [182 P. 67].) The rationale upon which this rule is based is that the right to accept the fruits of the judgment and the right to appeal therefrom are wholly inconsistent, and an election to take one is a renunciation of the other. *(Mathys v. Turner, supra.)*

Jeffries seeks to avoid the application of this rule and argues that his acceptance of the $128,000 on November 5, 1970, was not the acceptance of the benefit of the judgment but a benefit conferred by the arbitrator's award of October 8, 1970, which award was not confirmed by a judgment until November 16, 1973. Since no judgment existed at the time the benefits were accepted, argues Jeffries, he should not be precluded from appeal by a rule that applies only to appellants who have accepted the benefits of a judgment.

■ Although it is true that an arbitration award is not a judgment having the same force and effect as a judgment in a civil action until it is confirmed (Code Civ. Proc., § 1287.4;[2] *Jones v. Kvistad,* 19 Cal.App.3d 836, 840 [97 Cal.Rptr. 100]; *Walter v. National Indem. Co.,* 3 Cal.App.3d 630, 634 [83 Cal.Rptr. 803]) and that until it is confirmed it has only the same force and effect as a contract in writing between the parties to the arbitration (§ 1287.6; *Walter v. National Indem. Co., supra*), it is,

[2]Unless otherwise indicated, all statutory references hereinafter made are to the Code of Civil Procedure.

nevertheless, the final and binding decision or judgment of the arbitrator in the exercise of his quasi-judicial function to determine the disputed matters referred to him by the parties to the submission. (See § 1283.4; *Ulene* v. *Murray Millman of California,* 175 Cal.App.2d 655, 663 [346 P.2d 494]; *Boyd* v. *Bargagliotti,* 12 Cal.App. 228, 238 [107 P. 150] [disapproved on other grounds in *U.S. Plywood Corp.* v. *Hudson Lumber Co.,* 124 Cal.App.2d 527, 533 (269 P.2d 93)]; and see 6 Cal.Jur.3d, Arbitration and Award, § 35; 5 Am.Jur.2d, Arbitration and Award, § 124.)

Section 1283.4 provides, in pertinent part, that ". . . It [the award] shall include a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy." In *Ulene* it is stated that "A *final* award is one which conclusively determines the matter submitted, leaving nothing to be done but to execute and carry out the terms of the award. [Citations.]" (175 Cal.App.2d at p. 663.)

█  It is a recognized principle that an arbitration award is conclusive on matters of fact and law. (*Blodgett Co.* v. *Bebe Co.,* 190 Cal. 665, 671-672 [214 P. 38, 26 A.L.R. 1070]; *Crofoot* v. *Blair Holdings Corp.,* 119 Cal.App.2d 156, 185-186 [260 P.2d 156] [disapproved on other grounds in *Posner* v. *Grunwald-Marx, Inc.,* 56 Cal.2d 169, 183 (14 Cal.Rptr. 297, 363 P.2d 313)].) As stated by the editors of the topic on Arbitration and Award in California Jurisprudence: "Once a valid award is made, with the submission upon which it is founded it becomes the sole basis for any further determination of the rights of the parties with respect to any demands embraced in the submission, and the latter are merged and extinguished in the award. The award is conclusive on matters of fact and law, and all matters in the award are thereafter res judicata, on the theory that the matter has been adjudged by a tribunal which the parties have agreed to make final, a tribunal of last resort for that controversy." (6 Cal.Jur.3d, Arbitration and Award, § 41, p. 72.)

█  When an award has been made by the arbitrators the relief the court may grant upon a petition of any of the parties to an arbitration is limited to confirming, correcting or vacating the award. (§§ 1280-1293; *Jones* v. *Kvistad, supra,* 19 Cal.App.3d 836, 840.) As respects confirmation, its purpose is to raise the award to the status of a judgment having the same force as judgment in a civil action so as to render it enforceable like any other judgment of the court in which it is entered. (§ 1287.4; *Jones* v. *Kvistad, supra*; *Walter* v. *National Indem. Co., supra,* 3 Cal.App.3d 630, 634.)

In view of the foregoing, and taking cognizance that the purpose of arbitration is to settle differences in a summary manner outside of court for the purpose of expediting a decision by the use of an arbitrator, who is a private extraordinary judge chosen by the parties whose decision is called an award, we conclude that the essential adjudication in an arbitration proceeding is the award. The function of the court is limited to confirming the award as made, or to correct and confirm it as corrected, or to vacate it within the limitations and as provided by the statutes. Accordingly, we conclude that the principles governing acceptance of the benefits of a judgment, order or decree apply with equal force to an arbitration award.

■ The theory behind the "acceptance of benefits" rule is that if a person voluntarily acquiesces in or recognizes the validity of a judgment or decree, or otherwise takes a position inconsistent with the right of appeal therefrom, he thereby impliedly waives his right to have such judgment, order or decree reviewed by an appellate court. (*Mathys v. Turner, supra,* 46 Cal.2d 364, 365; *Conlin v. Southern Pacific R.R. Co., supra,* 40 Cal.App. 733, 747.) Accordingly, since arbitration is for the benefit of both parties, it would be incongruous to hold that a party can accept the award and the payment thereunder and then attack the award on appeal.

In *Matter of Silliman,* 159 Cal. 155, 158-159 [113 P. 135], it was held that a party to an arbitration, who has in part accepted the benefits of an award, cannot afterwards protest against it. In that case, after the award of the arbitrators had been made the appellant came to the respondent and asked that the stock given him under the award be turned over to him. Such affirmative action was held to be a recognition of the award and an acceptance of the fruits thereof. (At p. 159.)

Similarly, in *Ramish v. Marsh,* 178 Cal. 217 [172 P. 1100], where an award was made by the arbitrators, in a partnership accounting, Marsh, one of the partners, told Ramish, the other partner, to draw money from a corporation owned by the partners and to credit the amount so drawn as payment upon the sum due from Marsh to Ramish under and by virtue of the award of the arbitrators. This was done. Marsh then resisted proceedings of the arbitrators. It was held that the acceptance of the award by both parties, and the payment thereunder by Marsh to Ramish, constituted a waiver of any irregularities in the award.

Adverting to the instant case, we observe that the award of the arbitrator was the determination made by him on January 9, 1970

("Award of Arbitrator"). This was the *final* award since it conclusively determines the matter submitted, leaving nothing to be done but to carry out the terms of the award. (See *Ulene v. Murray Millman of California, supra,* 175 Cal.App.2d 655, 663; *Boyd* v. *Bargagliotti, supra,* 12 Cal.App. 228, 238.) The order designated "Final Order and Award" made by the arbitrator on February 23, 1973, was merely an order implementing and carrying out the terms of the award, as were the interim orders made on August 14, 1970, September 3, 1970, and October 8, 1970. We observe here that the $128,000 was accepted and received by Jeffries on November 7, 1970, subsequent to the award and the interim orders. The "final" order made on February 20, 1973, merely provided for final disbursement of funds pursuant to the award upon an adjustment of accounts between the parties, confirmed the fact that the Trollopes had complied with all preexisting orders of the arbitration, and confirmed the sale of the partnership assets to the Trollopes. This order indicated that the sum of $128,000 received by Jeffries was an overpayment and that upon an adjustment of accounts the amount due him was approximately $122,000.

■ There is an exception to the general rule, the applicability of which has not been argued by Jeffries, but which, nevertheless, merits discussion. The exception is applicable where an appellant is concededly entitled to the benefits which are accepted and a reversal will not affect the right to those benefits. (*Mathys* v. *Turner, supra,* 46 Cal.2d 364, 365; *Browning* v. *Browning,* 208 Cal. 518, 525 [282 P. 503]; *Mears* v. *Mears, supra,* 180 Cal.App.2d 484, 509; *Estate of Hoffman,* 213 Cal.App.2d 635, 640 [29 Cal.Rptr. 60].) This exception is most amenable to application in circumstances involving different items of property (*Estate of Hubbell,* 216 Cal. 574, 577 [15 P.2d 503]; *Ariana* v. *Parker,* 239 Cal.App.2d 524, 529 [48 Cal.Rptr. 834]), or where portions of the judgment appealed from are conceptually severable from those portions accepted. (*Templeton Feed & Grain* v. *Ralston Purina Co.,* 69 Cal.2d 461, 468 [72 Cal.Rptr. 344, 446 P.2d 152]; *Beverly Hills Nat. Bank* v. *Glynn,* 267 Cal.App.2d 859, 865 [73 Cal.Rptr. 808]; *Hansen* v. *Hansen,* 233 Cal.App.2d 575, 582 [43 Cal.Rptr. 729].)

However, the exception is inapplicable where the portion of the judgment appealed from cannot be reversed without affecting the right of the appellant to retain the fruits received and where the issues in the judgment's challenged portions are the same as, or interdependent with, matters not contested. (*Mathys* v. *Turner, supra,* 46 Cal.2d 364, 366; *Beverly Hills Nat. Bank* v. *Glynn,* 267 Cal.App.2d 859, 865 [73 Cal.Rptr. 808].)

■ In the instant case Jeffries does not attack the validity of the arbitrator's award made on January 9, 1970, but attacks only the validity of the orders made on October 8, 1970, and February 23, 1973. He asserts as grounds for appeal that the order of October 8, 1970, was procured by fraud[3] and that in making such order the arbitrator exceeded his powers. The order of February 23, 1973, is attacked on the basis that as the "final" order it was ineffective because it confirmed the invalid order of October 8, 1970. As already pointed out, we have concluded that both of these orders were merely orders implementing the award made on January 9, 1970, which we deem to be the arbitration award. Suffice it to say, assuming that Jeffries could obtain a reversal of these orders and that such a reversal would have the effect of setting aside what Jeffries considers to be the final award of the arbitrator, such a reversal would affect Jeffries' right to retain the $128,000. The award to Jeffries of the sum of $128,000 is of such a character that the alleged erroneous part of the arbitrator's award cannot be reversed without affecting that part of the award which adjudicated that Jeffries was entitled to receive the sum of $128,000 and thus requires a reversal of that part of the award which is favorable to him. Accordingly, by accepting and retaining the fruits of a part of the award which is in his favor, Jeffries is estopped from prosecuting an appeal from those parts of the award which are against him.

The appeal is dismissed.

Sims, J., and Elkington, J., concurred.

---

[3]The claim of fraud is predicated upon the failure of Tom Trollope to inform Jeffries that he had received an offer from Wayne L. Prim, in violation of the provisions of the award which required Trollope to inform Jeffries of the details of any offer of purchase in which Trollope concurred, and that Trollope made less than a wholehearted effort to sell the property to prospective purchasers. It is asserted that such conduct constituted a breach of fiduciary duty. Were it not for the dismissal, we would be disposed, upon a consideration of the contention on the merits, to hold that the conclusions of law made by the court upon the hearing of the petition for confirmation of the award that Trollope was not guilty of any fraud or unfair dealing in any act of Trollope concerning the partnership is predicated upon findings that are supported by substantial evidence. There is evidence in the record that the Prim-Trollope agreement was not an offer to purchase the partnership assets but a negotiation for a loan. As respects Trollope's efforts to sell the property to prospective purchasers, there was evidence that Trollope had shown the property to approximately 41 prospective purchasers.