[Civ. No. 17942. Fourth Dist., Div. Two. Jan. 8, 1979.]

FERN MARTIN FORREST, Plaintiff and Appellant, v.
MILDRED R. ELAM et al., Defendants and Respondents.

COUNSEL

John Guerin for Plaintiff and Appellant.

Heinly, Lindley & Thrasher and Thomas N. Thrasher for Defendants and Respondents.

OPINION

**GARDNER, P. J.**—Plaintiff appeals from the judgment in a partition action. The case arises long after the distribution of the estate of Alice E. Forrest, deceased. She provided in her will for her six children, plaintiff (Fern) included. As part of her dispositive plan she gave Fern the real property here involved "for so long as he lives upon the property, and upon his removal from the property, or upon his death, then the property is to be distributed to those children living at that time, share and share alike." ·

Alice E. Forrest died in 1960 and Fern took his life estate. In 1975 Fern filed a partition action against his then living siblings (then three in number) and prayed the property be sold and the proceeds divided between the parties according to their rights and interests.

The answer to Fern's complaint clarified at the outset the problem which still remains the focal problem in this appeal. The defendants were willing to sell the property and divide the proceeds equally four ways. Fern, instead, wanted the value of his life estate deducted first from the proceeds of sale and distributed to him with the balance divided equally among Fern and the three defendants.

According to the terms upon which the life estate was granted, Fern's "removal" from the life estate terminated it. The trial court found that Fern had abandoned the life estate by maintaining the partition action and agreeing to the sale of the real property. Consequently, Fern was not compensated for the value of his life estate and the net proceeds of the sale of the premises were divided equally between Fern and the defendants.

The gross sale price of the property was $56,000 with a net of $50,421.29 distributable. Each party was then awarded $12,605.32 but with attorney fee and cost liens against each share of $906.05, ·making a net of $11,699.27 to each party.

Below and on appeal Fern contends he should have been compensated for his life estate at the sum of $19,949.44 with the balance left distributed four ways (about $6,700 each). He also contends his attorney should have been awarded more fees than $1,750 and he should have been awarded more costs than $124.50 and the attorney for defendants should not have been awarded any fees (his award was also $1,750).

At the outset defendants have challenged Fern's right to appeal since he (and his attorney) have already accepted the benefits of the judgment by receiving the sums awarded. Fern's answer to this is that he has not accepted the benefits of the judgment in that his appeal is for additional money over and above that already received under the trial court's judgment. Essentially Fern talks in dollars and the defendants address what the dollars received are for. Fern has accepted nearly $12,000 as a remainderman interest while claiming appellate theories which would reduce the interest for which he was paid to something like $6,700. The attorney fee situation is similar in that adoption of Fern's position would reduce the common pot and therefore would presumably reduce the attorney fee predicated on legal action for the common benefit of the parties.

■ "The general rule is that a party is not entitled to accept the benefits of a judgment order or decree and then appeal from it. [Citations omitted.] The rationale upon which this rule is based is that the right to accept the fruits of the judgment and the right to appeal therefrom are wholly inconsistent, and an election to take one is a renunciation of the other." (*Trollope* v. *Jeffries,* 55 Cal.App.3d 816, 822 [128 Cal.Rptr. 115].) "The theory behind the 'acceptance of benefits' rule is that if a person voluntarily acquiesces in or recognizes the validity of a judgment or decree, or otherwise takes a position inconsistent with the right of appeal therefrom, he thereby impliedly waives his right to have such judgment, order or decree reviewed by an appellate court." (*Id.,* at p. 824.) "There is an exception to the general rule . . . . The exception is applicable where an appellant is concededly entitled to the benefits which are accepted and a reversal will not affect the right to those benefits. [Citations omitted.] This exception is most amenable to application in circumstances involving different items of property [citations omitted], or where portions of the judgment appealed from are conceptually severable from those portions accepted. [Citations omitted.] [¶] However, the exception is inapplicable where the portion of the judgment appealed from cannot be reversed without affecting the right of the appellant to retain the fruits received and where the issues in the judgment's

challenged portions are the same as, or interdependent with, matters not contested. [Citations omitted.]" (*Id.,* at p. 825.)

As a conceptual matter, we think Fern has accepted the fruit of the judgment by accepting nearly $12,000 as a remainderman and may not appeal contending, in essence, that such amount should be reduced so that he can have more pursuant to an interdependent part of the judgment which he wants reversed.

However, the attorney fees and court cost contentions must still be considered and to do this it is necessary to consider the propriety of the claim to payment for the life estate. Thus, we will consider all four contentions despite the persuasive nature of the acceptance of benefits argument by defendants.

## THE LIFE ESTATE

The court found:

"1. Plaintiff, FERN MARTIN FORREST, commenced this action for partition and requested the sale of the real property described in the complaint herein."

"6. Plaintiff was the owner of a life estate determinable in said real property.

"7. The life estate of plaintiff was determinable upon his death or removal from the property.

"8. The conduct of plaintiff constituted an abandonment of his life estate.

"10. The contingent remainder interest of the parties vested upon the removal or death of plaintiff.

"11. The interest of the parties in the proceeds of sale of said property is that of one-quarter each.

"12. Plaintiff, FERN MARTIN FORREST, is not entitled to the market value of a life estate interest in the proceeds of sale of said property."

Fern's contention is that there was no evidence of abandonment by him. He points to the will of Alice E. Forrest and says that at the time of sale, neither event had occurred which terminated the life estate (death or

removal) and thus the life estate still existed on the date of sale and he was entitled to compensation for the value of his life estate.

Fern has raised the application of former Code of Civil Procedure sections 778 and 779 (applicable at the time of the proceedings below). Section 778 provided that a life tenant whose estate had been sold "is entitled to receive such sum as may be deemed a reasonable satisfaction for such estate . . . ." Section 779 insured that the life tenant would receive the proper portion of the proceeds which was to be a "just and reasonable sum."

■ While it is not true in all other states, in California it is clear that there can be partition of successive estates as found in the case before us. There is no question that an owner of a life estate can bring a partition action.

However, all life estates are not created equal. Some are referred to as "absolute" meaning that the owner thereof can do almost anything with his interest other than commit waste. For this type of life estate partition promises a successful resolution.

Others are known as determinable or contingent because of various sorts of limitations placed upon the life estate. The life estate before us was not absolute. It continued to exist for only so long as Fern lived upon the property. It terminated upon Fern's death or his "removal" from the property. In context, the obvious meaning of removal is that if Fern moved his residence from the property his estate terminated. In other words, Fern was given use of the land for as long as he remained on it.

The trial court determined Fern had effectively *removed* himself from his estate by maintaining the partition action and consenting to sale. Fern responds that at the times mentioned by the court his life estate continued to exist. He observes that in partition actions the respective interests of the parties are measured *prior* to the moment of actual sale. Thus, he says, at the time that his interest was to be measured his life estate still existed for removal did not come until the time of sale.[1] The bare fact of his knowledge, he says, that his actions would ultimately lead to removal is not enough for knowledge of impending removal cannot properly be

[1]Fern recites in his brief that at the time of sale the defendants had *contingent* remainders while Fern owned a life estate and a *vested* remainder. Fern's favoritism to his position blinds him from its inherent inconsistencies. There could be no vested remainders unless the life estate was terminated.

equated with actual removal (the operative act). He argues that on the other hand, the fact that removal did occur at or after sale does not prevent his compensation for his interest must be measured prior to the time of sale.[2]

As we see it, Fern essentially admits the sale resulted in a removal. What he does not concede is his right to collect the full value of his life estate based upon his life expectancy. Fern's thread of logic rests on the fact his interest in the proceeds of a partition sale are determined at a time prior to sale.

We do not think Fern has the power to create an estate of greater proportions than granted to him. He was stuck with what he got. The fact that life tenants can bring partition actions does not mean that the use of partition can be set to the task of obtaining for the life tenant something more than he would normally be entitled to under the terms by which his estate was created.

Confidently Fern challenges this court to identify the exact moment of his removal. Either way chosen (by bringing action and agreeing to sale vs. time of sale) he believes he is entitled to compensation. We agree with Fern that until sale was accomplished there was no removal. We say this because until that sale was completed there remained the chance it would not be completed, for whatever reason, and Fern would simply continue to live out his days on the property.

We also agree with Fern that his interest was to be measured prior to sale and that at that time he did still possess an estate. What we disagree with is Fern's position he was entitled to full value for his life estate.

■ At the moment of measurement Fern did not have an *absolute* life estate entitling him to full compensation. Instead, at that time he possessed a life estate of clearly ascertainable limited duration. It was

---

[2]Conceptually the situation is quite simple. Fern could realize no money unless the real property was sold. He could not merely sell his life estate to another and move out for that would have been a removal which destroyed the life estate. Fern's age made sale of the life estate difficult (he was 74 years old) but the removal condition made it impossible (or at least nearly so). Fern, however, was the man in the driver's seat under the then existing law, only he could push the button to effect sale during his lifetime. By removing himself from the life estate he could vest the contingent remainder interests and himself collect a piece of the pie. This is what he attempted. ·

To pay Fern for the value of his life estate measured by his life expectancy is to assume Fern would have lived in the premises until his death. Thus, it would be totally inconsistent to pay Fern full value for a life estate and also pay him a share as a remainderman for theoretically he would have no remainder interest. Fern's entire position is replete with such inconsistencies.

known that upon sale the condition of removal would occur which divested Fern of the life estate. The valuation of his life estate was correspondingly reduced to reflect the true circumstances. Thus while we do not agree with the exact method the trial court used to reach its conclusion that Fern was entitled to no compensation for his life estate interest, our result matches that of the trial court. As a matter of law, when a life estate is being valued (proportionate share of expected proceeds determined) in a partition action in which the fact of sale will terminate the estate by the very terms of the creating grant, the value must be assessed as zero. Here the fact of sale not only ended an estate within the usual course of events in a partition action, it terminated the estate within the meaning of the durational grant.

Fern's reliance on *Riley* v. *Turpin,* 47 Cal.2d 152 [301 P.2d 834], and *Estate of Giacomelos,* 192 Cal.App.2d 244 [13 Cal.Rptr. 245, 91 A.L.R.2d 956], is misplaced. In *Riley* the life tenant owned an unconditioned life estate, unlike the instant case, and therefore was entitled to compensation for the full value of the life estate upon partition. (47 Cal.2d at p. 158.) *Giacomelos* involved an involuntary sale of real property by eminent domain and simply did not involve the questions before us. At most, *Giacomelos* is an example of the fact that when a life tenant is involuntarily divested of the estate by the government, the life tenant is to receive reasonable compensation for the loss of the estate. Neither *Riley* nor *Giacomelos* addresses the question of valuation where the owner of a conditional life estate brings a partition action and the successful completion of the partition sale terminates the life estate under the terms of the grant.

Fern stresses that the only evidence before the court on the value of his life estate was provided by his expert witness who testified to a life estate value of $19,949.44. This evidence would have been relevant if Fern had an absolute life estate. The nature of Fern's conditional life estate rendered his expert's value evidence irrelevant for no basis exists here for its introduction into evidence. Evidence of the value of a life estate only becomes material where a legal basis exists for its introduction such as where the life estate is absolute and the life estate owner must be compensated for loss of the estate interest.

When sale was effected upon Fern's petition, he removed himself from the life estate, as a matter of law, and vested the interests of the remaindermen, himself included. Contrary to Fern's contention, this conclusion does not involve some new and different interpretation of the

will of Alice E. Forrest in contravention of the finality of a probate court's determination. The meaning of "removal" simply was not a matter before the probate court back in the early 1960's. Also, Fern's right to payment was not admitted in the pleadings but only the existence of the life estate at the time the petition was filed was admitted. Fern pleaded for distribution of sale proceeds according to the rights and interests of the parties and that is exactly what happened.

The trial court acted properly in denying Fern payment for a life estate interest and Fern's contentions on the point are without merit.

### FEES FOR FERN'S ATTORNEY

The court awarded fees to Fern's counsel of $1,750. Counsel's declaration below recited the details of 62¼ hours spent on the case, described his many years of practice and experience, and related that his ordinary charge was $75 per hour. He requested a fee of $5,600 (about $1,000 more than his hourly rate multiplied by the number of hours expended) which was 10 percent of the gross sale of the property.

■ " '[I]t is only when the costs, including counsel fees entailed in said action, shall be found to have been expended for the common benefit that they shall be chargeable or recoverable by whichever of the parties, plaintiff or defendant, shall have so expended the same.' " (*Capuccio* v. *Caire,* 215 Cal. 518, 526 [11 P.2d 1097].) There is no suggestion in *Capuccio* that the parties should share the cost of attorney fees expended in behalf of one party for the presentation of a time consuming and meritless contention that he should receive some amount greater than that to which he is legally entitled. While the concept of attorney fees expended for the common good does not necessarily preclude sums expended in bona fide dispute between the parties (*id.,* at p. 529), common benefit is not reasonably construed to include the pressing of spurious matters.

The trial court gave a lesser fee than requested as compensation for services for the common benefit of the parties (see Code Civ. Proc., § 874.010, subd. (a) and former Code Civ. Proc., § 796) because it did not believe that Fern's efforts to take a greater share as a life tenant was for the common benefit of the parties. The trial court recognized that if Fern had not made an effort for life estate payment the matter would have been simply resolved since defendants, in their answer, pleaded they were willing to sell and divide the proceeds equally. The second affirmative

defense recited: ". . . the defendants are willing to stipulate that the property be sold and the proceeds divided equally between the plaintiff and defendants." Thus, at the outset the entire matter could have been handled in the proper manner by agreement of all concerned.[3]

The trial court concluded that Fern's counsel should not receive an award for legal services rendered against the common benefit which advocated a position of limited merit. We agree.

The reason behind the court's fee award decision is reasonable and we cannot say the court abused its discretion in making the $1,750 award. The fact that other courts in other cases on other facts have given larger awards compared to the value of the property is of no moment for each case must stand on its own facts.

### FEES FOR DEFENDANTS' ATTORNEY

The attorney for defendants was also awarded $1,750 for services rendered for the common benefit of the parties. Contrary to Fern's contention, counsel for defendants performed services for the common benefit of the parties by resistance to the efforts of Fern to take the life estate value to which he was not entitled. The court had before it the court file with its pleadings and was aware of the nature and extent of the efforts of each attorney. We find no abuse of discretion in making the award.[4]

[3]Perhaps there would have been a dispute concerning attorney fees and costs. This we cannot know with certainty for this case traveled a different path. However, assuming such a dispute, the fact remains that a less time consuming and more meritorious path of resolution was available.

[4]The declaration of counsel for Fern is also enlightening. It shows nearly seven hours spent in telephone conference with defendants' counsel or reviewing the latter's letters. It shows 10 hours' research time apparently for the purposes of preparing points and authorities (and defendants' counsel prepared a goodly bundle of them, too). It shows six hours spent merely reviewing the points and authorities of defendants' counsel. It shows two hours preparing for and appearing on the motion for summary judgment. While this effort by Fern's counsel was mostly for nought, it must be recognized that it was necessary for defendants' attorney to be spending at least a substantial proportion of the same time researching, reviewing, preparing opposition authorities, writing letters and so forth. The record shows substantial effort by defendants' counsel and compensating him for roughly 23 hours' work is probably but the tip of the iceberg considering the 62¼ hours of work claimed by Fern's counsel.

## FERN'S COSTS

■ Fern complains of the trial court's refusal to allow the $200 cost for testimony of the expert witness for Fern who valued the life estate. The reason for denying the expert witness fee as costs to be shared by all parties is, apparently, twofold. First, the testimony related to the nonmeritorious issue of full valuation of the life estate as if it has been an absolute life estate. Second, the court found the testimony itself suspect, i.e., "it should be noted that his testimony is considered inherently open to question in view of his appraisal of the life estate of the plaintiff, 74 years of age, at a figure of more than one-third of the value of the property."

Fern was not entitled to an award of *all costs* to be charged against the interests of the parties but rather to those costs incurred for the common good. It was a reasonable exercise of discretion for the trial court to conclude that the expert witness fees were not incurred for the common benefit of the parties.

Judgment affirmed.

Kaufman, J., and McDaniel, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 22, 1979.